## THE STATE OF CONNECTICUT *vs.* ANDREA LAUDANO.

*First Judicial District, Hartford, March Term, 1902.

TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The rule with regard to setting aside a verdict as against evidence is the same in a criminal as in a civil case: if the evidence is conflicting the verdict will not be set aside.

Counsel should be accorded a generous latitude in argument, as the limits of legitimate, fair comment cannot be determined precisely by rule and line, and something must be allowed for zeal in the heat of discussion.

Where remarks claimed to be improper and prejudicial to the adverse party are made in the argument to the jury, objection should be taken at the time in order that the trial court may have an opportunity to prevent or correct the evil; otherwise the remarks, unless flagrantly abusive, will not be available as ground for a new trial.

Upon the trial of an Italian for murder in shooting a policeman, the State's Attorney in his argument to the jury alluded to a remark which one of the prisoner's friends was said to have made, as evincing the spirit which dominated, encouraged and upheld the Mafia. *Held* that while the allusion to the Mafia was improper, the practical question was, after all, what effect, if any, it had upon the verdict of the jury; that the determination of that matter was one for the trial court in the exercise of its judicial discretion; and that its judgment in refusing to grant a new trial would not be reversed on appeal, unless it was manifest that such discretion had been exceeded or abused to the injury of the prisoner.

Whether a person has or has not such an opinion on the merits of a case as disqualifies him from sitting as a juror is essentially a question of fact to be settled by the trial court, whose conclusion, based upon proper evidence, will not ordinarily be reviewed by this court.

An "impression" or "opinion" that the accused had committed a crime, formed from reading newspaper accounts or from casual conversation, the removal of which may or will require some evidence, does not disqualify one called as a juror, provided he has no settled or fixed opinion respecting the merits of the case, is unprejudiced, and will be governed solely by the evidence.

At the time of the shooting, the policemen were attempting to arrest, in the prisoner's house, a woman who, as claimed by the State, had just before that been upon the street in man's attire in an intoxicated condition. *Held* that evidence that she was intoxicated after

---

*Transferred from third judicial district,

the shooting was relevant and admissible to prove her condition when she was on the street just before the shooting; and that whether her intoxication in the house justified an arrest without a warrant, was not a question then before the court.

The State offered evidence that three pistol bullets, caliber .38, were found in the decedent's body, and that within a few minutes after the shooting five empty cartridge shells of the same caliber were found in the prisoner's bedroom. *Held* that these shells were admissible in evidence, without first proving that the accused had a pistol of that caliber, or that he was connected with the shells found.

Upon his cross-examination the accused was requested by the State's Attorney to mark the map where he and another witness stood. Counsel objected, saying that the accused ought not to be compelled to do so. The court made no ruling and the accused marked the map as requested. *Held* that under these circumstances the claim that the court virtually forced the accused to give evidence against himself was frivolous.

It is within the discretion of the trial court to admit in rebuttal evidence which might more properly have been introduced in chief.

In charging the jury the court called their attention to that provision of our Constitution which forbids the arrest, detention or punishment of any person, except in cases clearly warranted by law (Art. 1, § 10), but failed to instruct them that they might also consider § 8 of the same Article relating to security from searches and seizures. *Held* that § 8 had no applicability to the case, and that the trial court did not err in refusing to tell the jury to consider it.

Argued March 18th—decided April 9th, 1902.

INDICTMENT for murder in the first degree, brought to the Superior Court in New Haven county and tried to the jury before *Roraback, J.;* verdict and judgment of guilty, and appeal by the accused for alleged errors in the rulings and charge of the court. *No error.*

The accused also filed a motion for a new trial upon the ground of a verdict against the evidence, and because of alleged improper comments by the State's Attorney in his argument to the jury. *New trial denied.*

The case is sufficiently stated in the opinion.

*Levi N. Blydenburgh* and *Sanford B. Martin*, with whom was *Paul Russo*, for the appellant (the accused).

*William H. Williams*, State's Attorney, and *Alfred N.*

*Wheeler*, Assistant State's Attorney, for the appellee (the State).

TORRANCE, C. J.   The accused was indicted for the murder of Hugh McKeon, a policeman of the city of New Haven.   The evidence in the case on the part of the State tended to show that the deceased, with two other policemen, on the 31st day of July, 1901, went to the dwelling-house of the accused in New Haven, about midnight, for the purpose of arresting a woman there ; that the three policemen gained peaceable admission to the hall of the house, and that while in there the accused shot McKeon with a pistol, thereby inflicting upon him certain mortal wounds of which he died soon after.

The accused claimed that he did not fire the fatal shots, and the evidence offered by him, including his own testimony, tended to support this claim.   He was found guilty and sentenced to death, and from that judgment he brings to this court two appeals.   One of them is from the action of the trial court in denying a motion for a new trial made by the accused, and the other is based upon certain claimed errors of the trial court alleged to have occurred in impanelling the jury, and during the trial of the case.

The appeal from the action of the trial court in denying the motion for a new trial will be first considered.   This motion is based upon two grounds : first, that the verdict was against the weight of the evidence in the cause ; and second, that the State's Attorney, in his argument to the jury, made certain improper remarks prejudicial to the accused.

The first question is whether the verdict was against the evidence.   Strictly speaking, in a case of this kind, and upon the point under consideration, we are dealing with the action of the judge with reference to the motion, rather than with the action of the jury with reference to the verdict; but the controlling question in such cases is, after all, whether or not the verdict is against the evidence.   *Lewis* v. *Healy*, 73 Conn. 136, 137.   The principles to be applied in such

cases are the same, whether the case is of a civil or a criminal nature; and those principles have been so fully and clearly stated in the following cases in this court, as to make further discussion or statement of them superfluous. *Johnson* v. *Norton*, 64 Conn. 134; *Brooks' Appeal*, 68 id. 294; *State* v. *Lee*, 69 id. 186; *Loomis* v. *Perkins*, 70 id. 444; *State* v. *Kaplan*, 72 id. 635, 637; *Howe* v. *Raymond*, 74 id. 68. The evidence in the case at bar is quite voluminous, and it appears in full upon the record; but it would serve no useful purpose to analyze, weigh, and review that mass of evidence at length here, nor to give our reasons in detail for the conclusion reached upon the question now under consideration; nor is it customary in such cases to do so. *State* v. *Coffee*, 56 Conn. 399, 418. It is enough to say that, after a careful reading of that evidence in the light of the principles to be applied to it in determining the present question, and after giving to the claims of the accused with respect to that evidence the deliberate consideration that the importance of the case demands, we are of opinion that neither this court nor the trial court could rightfully hold that the verdict was against the evidence in the cause. We think the trial court committed no error in denying the motion for a new trial, so far as that motion was based on the claim that the verdict was against the evidence in the case.

The next question is whether the claimed improper remarks of the State's Attorney entitled the accused to a new trial on his motion. To properly understand this claim it will be necessary to quote at some length from the record. It appeared in evidence that the accused was born in Italy, in 1867, and that in 1883 he came to this country and to New Haven, where he had since resided. It also appeared in evidence " that the neighborhood of the defendant's home was largely comprised of his own countrymen, and that at the time of the shooting several of his neighbors had observed the policemen go to his door just prior to the shooting, subsequently heard the shots, and saw policeman McKeon come out and fall upon the sidewalk. The defendant called a number of his countrymen (including several of the defendant's

neighbors aforesaid) to testify to conversations had with the State's witness De Bello subsequent to the shooting, for the purpose of discrediting De Bello ; and it appeared in evidence that De Bello, immediately after the shooting was heard, left De Maio's saloon, where he was at the time of the shooting, and went to the assistance of the police, and did all he could to assist them in their endeavor to catch the defendant. It also appeared from the evidence on the trial that none of the countrymen of the defendant (other than De Bello) rendered assistance to the police at the time aforesaid, although several of them were watching and observing the conduct of the officers following the shooting ; and it also appeared in evidence that several of the countrymen of the defendant, who were called as witnesses in his behalf, including his brother, had attempted to dissuade De Bello from testifying for the State against the defendant, one of whom told him that he should ' help the living, now.' "

With respect to this matter the State's Attorney, in his argument, made the following remarks : " No one sought to come to the rescue (and how many heard the deadly shots) but De Bello. I stand him against the whole pack of them, and I say God bless him for his disposition, and his effort to bring to justice the murderer that night. Believe him, or not, the case doesn't rest upon De Bello. Whatever you may think of him, believe Luigi Moresca, believe this Carlo, believe these others that you have seen here—and I can't do them justice in my description of them—believe them, if you will, but give De Bello credit for his efforts that night to bring assistance, to give the alarm, and to hunt for the murderer. He made no friends among his countrymen by that conduct. No, gentlemen of the jury, ' Help the living,' is their motto ; ' He is dead, help the living,' is the motto of those who believe in the Mafia."

Thereupon one of the counsel for the accused said : " I object to that ; there is no evidence of the Mafia, or anything of the kind. If you claim he believes in or belongs to the Mafia, I object to it. To this the State's Attorney replied : " Nobody says that he believes in or belongs to the Mafia,

State v. Laudano.

but I say that the spirit that dominates, encourages, and up-
holds the Mafia is just the kind of spirit to enunciate the
doctrine : 'Help the living,' and "—*Counsel for the accused :*
" I take exception to these remarks, if your honor please."
*The Court :* " Exception noted.   Go on with your argument,
Mr. Attorney."   *The State's Attorney :* " ' Help the living ;
he is dead,' is their motto."

Certain other remarks made by the State's Attorney in
argument, upon which the motion for a new trial was based
in the court below, were made under the following circum-
stances : The defense was, in substance, that the accused did
not fire the fatal shot at all, and, incidentally, that McKeon
was shot by Turbert, one of his fellow-policemen, or by some
one else, accidentally, while in the hallway of the house of
the accused.   In their arguments to the jury counsel for the
accused had severely criticised the conduct of the coroner
as unfair and unjust to the accused, had attacked and severely
criticised the conduct of the State's Attorney, had impugned
his motives, and charged that both he and the coroner had
endeavored to procure and shape testimony to support cer-
tain theories founded by them in regard to the case ; and
" appealed to the jury to give the defendant a fair trial, and
that he was entitled to as fair treatment at their hands as
though he was the governor's son, or the son of the president
of the United States."   With reference to the foregoing de-
fense set up by the accused, and the appeal made by his
counsel to the jury for a fair trial and fair treatment, the
State's Attorney in his argument made the following remarks :
" Now, what is the issue here ?   The issue is whether this
man at the bar be guilty of wilful, deliberate, and premedi-
tated murder, or whether he be innocent : there is no middle
ground.   There is no manslaughter, there is no second degree,
there is no self-defense.   Either his story is true, or it is
false.   If it is true, he deserves at your hands an acquittal,
that he may go forth from this court-room free, vindicated
and acquitted of any wrong.   If it is not true, then the
other conclusion follows, inevitably follows.   They say you
must consider his testimony.   I say so, too.   They say,

gentlemen of the jury, as though it was necessary to say to you, an intelligent jury, in New Haven county, Connecticut, that every man, be he however so low, is entitled to a fair trial at your hands ; whether he be a governor's son or of humble birth, says his counsel, he is entitled to a fair trial. Ah, yes, and though the victim of his malice be of humble birth, though he be but a mere police officer, or even if he occupy the highest official position in these United States, and they shoot him down regardless of the law, regardless of his position, we will cry out, 'Hold ! don't touch him,' but give him a fair trial ; give the benefit of all the forms of law, of all the provisions of law which sacredly guard the innocent, and prevent the condemnation of any but the guilty. Don't harm him until he has been found guilty beyond reasonable doubt.     Ah, gentlemen of the jury, they say, driven by the exigencies of their case, and their cause, and their theories (for they are possessed with many of them), poor Hugh McKeon fell to his death from a bullet fired by Turbert.     Of all the wicked things that have been suggested, that have been insinuated here, that is the worst."

For the remarks made in either and both of the foregoing quotations from the argument of the State's Attorney, the accused moved for a new trial, and the action of the trial court in denying that motion is assigned for error in both appeals in this case.

To some of the remarks made in the first of the two foregoing quotations, counsel for the accused objected at the time they were made and obtained a ruling thereon ; while to the other remarks, made in the second of these quotations, no objection was made, nothing was said at the time, and the attention of the trial court was not called to them at all during the trial.     Because of this failure to object to these last-quoted remarks, or to call the attention of the court to them in any way during the trial, we think they were not available as the ground of a motion for a new trial.     The general rule in such cases is that the remarks must be objected to, or called to the attention of the trial court in some way, when made, or at least during the trial, that opportu-

nity may thus be given to that court to prevent or correct the abuse. *State* v. *Ward*, 61 Vt. 153 ; *State* v. *Watson*, 63 Me. 128 ; *Willingham* v. *State*, 21 Fla. 761 ; *Young* v. *State*, 65 Ga. 525. See also cases cited in note, 46 L. R. A. 641. Of course, cases may occur where this general rule should not be applied ; cases where the abuse of the attorney's privilege is so flagrant as to warrant a new trial, even though court and counsel both have neglected to discharge their duty ; but the remarks made in the second of the above quotations come within the general rule. Even if the accused had seasonably objected and excepted to the remarks in question, we do not think they would constitute a ground for a new trial. Looking at the evidence in the case, and the claims and arguments made on behalf of the accused, and the charge to the jury upon the issues in the case, we cannot say that the remarks exceeded the limits of fair argument and comment, or that the accused was thereby deprived of a fair trial, or that the trial court, in refusing to grant a new trial on this ground, exceeded or abused the discretion committed to it in matters of this kind.

The next question relates to the remarks of the State's Attorney in argument to which objection and exception were taken as hereinbefore stated. The precise objection taken was to the remarks referring to the Mafia, and those alone will be considered in the discussion. If the objection was intended to cover the quoted remarks preceding that reference, it was not well taken, for we think those remarks were within the limits of legitimate argument and comment in this case.

In the remarks objected to, the State's Attorney, in commenting on the evidence in the case bearing upon the conduct of some of the witnesses for the accused, said, in effect, that the spirit exhibited by them as shown by their conduct was the spirit which dominated, encouraged and upheld the Mafia. We think the reference, even when qualified by the statement that no one claimed that the accused believed in or belonged to the Mafia, ought not to have been made, and that the court should have sustained the objection to it in

this case. It does not follow from this, however, that a new trial ought to be granted on account of the remarks. "If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation." *Dunlop* v. *United States,* 165 U. S. 486, 498. The question before us on this appeal is not, primarily, whether the remarks in question were proper or improper, but it is whether the action of the trial court in refusing to grant a new trial on account of them, in the exercise of its discretion, so far exceeded or abused the discretion committed to it in a matter of this kind as to warrant us in granting a new trial. The question relates to the action of the trial court, rather than to that of the State's Attorney. Over the arguments of counsel, as well as over the conduct of the trial in other respects, the trial court is and must be invested with a large discretion; and although this is a judicial discretion and therefore its exercise is subject to review and control to some extent, yet that exercise will not be interfered with save in cases where it has been clearly exceeded or abused to the manifest injury of some party. Counsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. Now, assuming that the remarks in question were improper, were they of such a nature, under all the circumstances, that a reasonable man, looking at the evidence in the case, would say that they may have so prejudiced the jury unfavorably to the accused as to deprive him of a fair trial? If they did not, he is not entitled to a new trial however improper the remarks may have been. Whether they did so prejudice him was a question of fact for the trial court to pass upon, and it decided it in the negative. It was a question within its discretionary power, and it was in a much better position to pass upon that question than we are. Moreover, there is nothing upon the record to show that the court was wrong

in this conclusion, or that the remarks in question had any effect whatever in bringing about the verdict. Upon the whole record, then, our conclusion is that the trial court had a discretion to grant or refuse a new trial on account of the remarks in question, and that in the exercise of that discretion we ought not to hold that it erred in refusing to grant one.

The questions next to be considered are those errors assigned upon the other appeal in this case. One of these relates to the remarks of the State's Attorney already considered, and that assignment need not be further discussed here. The other assignments of error relate to the action of the trial court (1) in overruling certain challenges to the jurors for cause, (2) in ruling upon questions of evidence, and (3) in charging the jury. These will be considered in the order stated.

Upon the preliminary examination of jurors as to their qualifications to act in the case, the accused challenged seven of them for cause, and he exhausted all the peremptory challenges to which he was entitled. In the case of each of these seven jurors the court found that they "had no such settled or fixed opinion in regard to the merits of the case as should disqualify him as a juror, and that he was unbiased, unprejudiced, and wholly competent and qualified to sit as a juror in the case"; and overruled the challenge for cause, to which the accused excepted.

The accused claims that such finding is against the evidence produced in respect to each of said seven jurors, and that evidence is spread upon the record in order that this court may determine whether that claim is correct or not. The question whether a person has or has not such an opinion on the merits of a case as disqualifies him from trying it as a juror, is essentially a question of fact to be settled by the trial court; and the conclusions of that court upon that matter, based upon proper evidence, will not ordinarily be reviewed by this court. In the present case, however, the claim that upon the undisputed evidence the conclusion of the court upon this matter is clearly wrong, is so earnestly

pressed that we will briefly consider it. The testimony given
by the jurors in question was to this effect, in substance:
that they did not know the accused, had read in the news-
papers an account of the shooting, or had casually heard it
talked about, and from such sources only had "thought" or
formed "an impression" or "opinion" that a crime had been
committed, and that the accused had committed it; that it
would or might take some evidence to remove such thought,
impression, or opinion; that they had no settled or fixed
opinion about the matter, would be governed as to their
verdict solely by the evidence in the case and not by what
they had read or heard about it; that they would not con-
vict unless the evidence showed beyond reasonable doubt
the accused to be guilty; that they had no feelings of prej-
udice or ill-will against the accused, and believed they could
try the case impartially upon the evidence to be produced in
court, without being prejudiced or influenced by what they
had heard or read about it.

Upon this evidence, acting upon the principles concerning
matters that disqualify jurors, as laid down in *State* v. *Wil-
son*, 38 Conn. 126, and in *State* v. *Willis*, 71 Conn. 293, and
in other cases decided by this court, we think the court below
was amply justified in finding as it did, and in overruling
the challenges for cause of which the accused complains.

The rulings upon evidence are next to be considered.
These are somewhat numerous, but neither singly nor com-
bined do they merit lengthy discussion. The State claimed,
upon evidence not objected to, that the woman, whom the
policemen attempted to arrest at the house of the accused at
the time McKeon was shot, had been upon the streets of the
city of New Haven dressed in men's clothing and in an in-
toxicated condition, immediately prior to the attempted
arrest, and that this justified her arrest without previous
complaint and warrant, under the city charter. To prove
that she was thus intoxicated immediately prior to the at-
tempted arrest, the State offered the evidence of several wit-
nesses tending to show that she was intoxicated immediately
after, or within a short time after, the shooting. This was

State v. Laudano.

objected to on the ground that it was immaterial, and would not justify her arrest after she had entered the house.

Her condition as to intoxication soon after the shooting was clearly relevant and admissible to show her condition when she was on the street immediately before the shooting; and the objection that her intoxication while in the house would not justify her arrest there without a warrant, was not a valid objection to the evidence offered. Whether her intoxication in the house justified an arrest without a warrant was a question not then before the court.

The State offered evidence to show that three pistol bullets, caliber .38, had been found in the body of McKeon, and that within a few minutes after the shooting five empty pistol cartridge shells, caliber .38, had been found upon a table in the bedroom occupied by the accused. The State offered these shells in evidence, and the accused objected, on the ground that it had not yet been shown that he had had in his possession any pistol of that caliber, or was in any way connected with the shells found.

The objection was properly overruled. The claim upon which it was based was in dispute, but even if it had not been in dispute, still the State had a right to take one step at a time in presenting its case, and no claim is made that the State did not subsequently offer evidence tending to connect the accused with the empty shells.

On his examination, both on the direct and cross, the accused had voluntarily referred to the map of the *locus in quo* in use during the trial, and had pointed out upon it various objects and the relative position of himself and others on the night of the shooting; he said he understood the map, and had pointed out upon it where he stood when Turbert fired at him, and where Turbert stood at the time. The State's Attorney then asked the accused to put the letter T upon the map where he claimed Turbert stood, to make the letter L upon the map at the point where he claimed he, the accused, stood, and to make on the map two dots representing where, as he claimed, himself and Turbert stood. Counsel for the accused objected, and said the witness should not

be compelled to do that. The court did not compel the witness to comply with the request, but apparently left him to do as he pleased, and the witness did as requested.

Under the circumstances, the claim that the action of the court practically amounted to " forcing the accused " to give evidence against himself, is frivolous.

During the cross-examination of the accused he was asked this question by the State's Attorney: " Does it affect your memory as to what you testified to before the coroner, to have me ask the question more than to have Judge Blydenburgh?" The court overruled a general objection to this, and the witness answered: " It is the same thing." Upon the facts disclosed by the record, which it is not important to state here, the ruling was correct.

Upon the cross-examination of Turbert he was asked as to the whereabouts of his revolver at the time of the shooting of McKeon, and he said it was at the police station in his closet, and that he did not have any revolver upon his person on the night of the shooting. Afterwards the accused offered evidence tending to show that Turbert, a short time prior to the shooting, had a revolver upon his person, and that at the time of the shooting he fired it several times. The accused had also offered evidence tending to show, and from which he claimed, that Turbert had fired the shots that killed McKeon. In rebuttal the State called upon Turbert to produce the revolver referred to in his cross-examination, and he did so. The State offered the pistol in evidence. This was objected to on the ground that it did not disprove that Turbert had a pistol on the night of the shooting, as claimed by the accused.

We think this was admissible for what it was worth. and it was within the discretion of the court to admit it on the rebuttal, even if it would have been more properly admissible in chief.

The same thing is true of the objections made to the evidence of Mero and Rodgers, witnesses for the State called in rebuttal. We think there was no error in such rulings, and clearly none for which a new trial should be granted.

The objection to the question asked of Spinello by the State's Attorney on cross-examination is not mentioned in the brief of counsel for the accused, and upon the record it is clear that the court did not err in overruling it. The foregoing are all the rulings upon evidence which are assigned for error.

The next questions to be considered are those relating to the charge of the court. It is somewhat difficult to understand from the reasons of appeal, or the brief on behalf of the accused, what the precise things are of which complaint is made. It is indeed alleged in the reasons of appeal, that the court refused to charge some ten or eleven written requests made by the accused, but the record clearly shows that these requests, with one or two exceptions, were fully embodied in the charge, many of them in the very words of the request. This matter was not argued orally before us, and less than half a page is devoted to it in the brief of counsel for the accused. From that brief, however, we gather that the things of which they especially complain are these: first, the failure of the court to tell the jury that, along with § 10, of Art. 1, of our State Constitution, they might also consider § 8 of the same article; second, the failure of the court to properly instruct the jury as to the distinction between the rights and powers of an officer to make an arrest on the street, and his rights and powers to make an arrest in the home of the person arrested.

We fail to see that § 8, above referred to, had any applicability in the case at bar, and we think the court did not err in refusing to tell the jury that they might consider it.

As to the other claim we deem it sufficient to say that we think it is not supported by the record. The jury were fully and properly instructed as to the right and power of an officer to make an arrest, as to the right of the accused to defend himself from unlawful arrest, and as to his rights to defend his habitation against unlawful entry, or unlawful violence offered therein, and as to his right to resist the officer in an unlawful attempt to arrest the accused, or any inmate of the house while therein under the protection of the

accused. In short, upon a careful study of the entire charge, it clearly appears that there is nothing in it or omitted from it which affords any ground for a new trial, or of which the accused can rightfully complain.

There is no error apparent upon the record and a new trial is denied.

In this opinion the other judges concurred.