JENNIE JAMES *vs.* SYLVESTER P. BOWEN, EXECUTOR,
· ET ALS. (JENNIE JAMES' APPEAL FROM PROBATE).

Third Judicial District, Bridgeport, October Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and GAGER, JS.

A party who has full knowledge of improper conduct by his adversary's
    attorney which is calculated to arouse the sympathies or friendly
    feelings of the jury, cannot remain silent and speculate on the
    chances of a favorable verdict, and afterward be heard to com-
    plain when the verdict is unsatisfactory. His failure, under such
    circumstances, to act promptly, will in all cases save those of fla-
    grant misconduct, be regarded as a waiver of his right to relief.
During the trial of a cause in the Superior Court the attorney for the
    defendants caused to be published in a local newspaper an article
    in which he zealously defended a preceding jury—nine of whom
    also sat in the present case—from adverse criticism for having
    awarded only $300 damages against a defendant for causing the
    death of a boy. The attorney for the plaintiff showed the presiding
    judge a copy of the article, and after the matter had been discussed
    in chambers the trial judge inquired of such attorney whether he
    desired the court to take any action with regard to it, and he re-
    plied in the negative. Thereupon the trial was resumed and no
    further reference was made to the matter until after the rendition
    of the verdict, which was in favor of the defendants. At this time
    it did not appear that the newspaper article had actually been
    seen by any of the jurors. While the jury were deliberating upon
    their verdict, the attorney for the plaintiff ascertained that one
    of the jurors had taken several copies of the newspaper contain-
    ing the article to the jury-room, but did not call the court's atten-
    tion to this fact until after the rendition of the verdict, when he
    moved to have it set aside. The trial court, after argument, de-
    nied the motion upon the ground that the defeated party, with
    knowledge of the impropriety, had deliberately refused to request
    either the dismissal of the jury or to ask that they be admonished,
    and had therefore waived his right to relief. *Held* that the motion
    was one addressed to the judicial discretion of the trial court, and
    that the record failed to show any abuse in its exercise which would
    warrant a new trial of the cause.

Argued November 1st—decided December 16th, 1910.

APPEAL from a decree of the Court of Probate for
the district of Norwalk approving and admitting to

probate a certain written instrument as the last will of Frances E. Cox of Norwalk, deceased, taken to the Superior Court in Fairfield County and tried to the jury before *George W. Wheeler, J.;* verdict and judgment sustaining the will, and appeal by the plaintiff for the refusal of the trial court to set aside the verdict upon the ground of improper conduct upon the part of defendants' attorney. *No error.*

*Edward M. Lockwood,* for the appellant (plaintiff).

*Michael Kenealy* and *John F. Keating,* for the appellees (defendants) were stopped by the court.

RORABACK, J.   This action is an appeal from an order admitting to probate the will of Frances Emily Cox, which was tried to the jury in the Superior Court in Fairfield county.   The reasons of appeal alleged mental incapacity and that undue influence was exercised over the testatrix.

The trial to the jury was commenced on Thursday, February 3d, 1910, and continued on Tuesday, February 8th, Wednesday, February 9th, and Thursday, February 10th, 1910.   On Monday, February 7th, 1910, while this trial was pending, there appeared in the *Stamford Advocate*, a daily newspaper published at Stamford, Connecticut, an article given to the newspaper for publication by Homer S. Cummings, who was the attorney for the defendants, and who as such attorney was then engaged in the trial of this case. The newspaper article began with this heading: "CUMMINGS DEFENDS CRITICISED JURY."   It had reference to the case of McCann v. McGuire, in which the jury rendered a verdict of $300 for the death of a boy killed by an automobile, and also to a case following in which they rendered a verdict for $500 for injuries due to a

collision with an automobile, in which the injured person lost a couple of teeth. In the McCann case the judge, upon his own motion, immediately set the verdict aside. The jury rendering this verdict were thereafter severely criticised and ridiculed by the press of the State. Nine of the jurors in the present action were also jurors who tried the McCann case. Mr. Cummings was the attorney for the prevailing party in the McCann case, but was not interested in the action in which the jury rendered the verdict of $500. This newspaper article also stated that Mr. Cummings, among other things, said: "There is, therefore, nothing extraordinary in the verdict, and no reason for indulging in adverse criticism against men who have conscientiously done their duty to the best of their ability and with far greater knowledge of the case than is possessed by those who have criticised them."

On Thursday, February 10th, 1910, in chambers, Mr. Lockwood, the attorney for the plaintiff, handed the judge presiding at the trial a copy of this interview as it appeared copied in the *Norwalk Hour*. After the matter had been fully discussed by the court and counsel, the court inquired of Mr. Lockwood if he wanted anything done in respect thereto. Mr. Lockwood replied, that so far as he was concerned he did not request that any action be taken in court. At this time, it was not brought to the court's attention, nor did it appear to the court, that the newspaper article in question had actually been seen by any of the jury.

After this discussion between the court and counsel the trial was resumed. The court, in its charge to the jury, did not refer to the article, and the case was committed to the jury without any further action by either court or counsel as to the matter. While the jury were deliberating upon their verdict, the attorney for the plaintiff ascertained that one of the jurors had pro-

cured ten copies of the *Stamford Advocate* containing this interview with Mr. Cummings, and had taken them to the jury-room. Immediately following the rendition and acceptance of the verdict for the appellees, the attorney for the plaintiff for the first time called the court's attention to these facts, and requested that the jurors, before being discharged, should be examined, for the purpose of obtaining evidence to support a motion which he proposed making to set aside this verdict on account of these facts. Such motion was subsequently reduced to writing, fully heard, and denied, because the impropriety claimed was known to the plaintiff before verdict, and because she deliberately refused to request the court to take any specific action, either to dismiss said jury or to admonish them; it was also found that Mr. Cummings, in the publication of the interview, was not actuated by any improper or ulterior motive, and it was not his purpose to attempt to influence in any way the jury.

Other than is stated herein, there was no evidence tending to prove that the jury were unduly prejudiced in behalf of the attorney for the defendants because of said article, or that the verdict was in any wise influenced by its publication.

There are four exceptions to the finding and to the refusal of the trial court to incorporate in it certain matters which the plaintiff contends are material to properly present her claims of law to this court. One of these exceptions relates to a conclusion which necessarily follows from the facts found. Another refers to certain claims of law which the plaintiff contends were made in her request for a finding and which the trial court ignored. An examination of the record shows this claim to be baseless, as the alleged claims of law were not contained in the draft-finding presented to the court below.

Vol. lxxxiii—45

The finding as made and corrected by the trial court fully and fairly presented all the facts for the proper presentation of every question which the plaintiff could urge upon her appeal, and the motion to correct does not merit further consideration.

The main question in the case is as to the court's denial of the motion to set aside the verdict of the jury on the ground of the alleged improper conduct of Mr. Cummings, the attorney for the appellees.

An examination of the newspaper item in question shows that, under the facts found, it might have affected the impartiality of the proceedings in this case by causing the jury to entertain a friendly feeling toward Mr. Cummings, who had so zealously defended them against criticisms contained in the newspapers. It does not follow from this that a new trial ought to be granted. The question before us is not, primarily, as to the effect of the conduct of Mr. Cummings, but it is whether the action of the trial court, in refusing to grant a new trial, clearly exceeded the discretion which is committed to it in matters of this kind. "Over the arguments of counsel, as well as over the conduct of the trial in other respects, the trial court is and must be invested with a large discretion; and although this is a judicial discretion and therefore its exercise is subject to review and control to some extent, yet that exercise will not be interfered with save in cases where it has been clearly exceeded or abused to the manifest injury of some party." *State* v. *Laudano*, 74 Conn. 638, 646, 51 Atl. 860.

It appears that when the counsel for the plaintiff first called the attention of the court to this publication, he knew its contents and its probable effect if it should reach the jury. No demand was then made for any action by the court, although counsel was asked if he wanted anything done in this connection. Sev-

James *v.* Bowen.

eral hours later, when he ascertained that the publication had been seen by the jury, he was in full possession of all the facts, and sat silent, withholding from the court the information he possessed, and took his chances of obtaining a favorable verdict. The verdict was returned against him, and he then made the objection which should have been made when he first knew that the newspapers had been taken to the jury-room. It was his duty to object at that time, if he was going to object at all. The general rule in such cases is that a party shall not be permitted to lie by, after having knowledge of an irregularity of this kind, and speculate upon the result, and complain only when the verdict is unsatisfactory to him. *State* v. *Tuller*, 34 Conn. 280, 295. Cases may occur where this general rule should not be applied; cases where the abuse of the attorney's privilege is so flagrant as to warrant a new trial, even though court and counsel have both neglected to discharge their duty. *State* v. *Laudano*, 74 Conn. 638, 645, 51 Atl. 860. The trial court, after listening to the testimony and arguments of counsel, with an opportunity to fully appreciate the probable effect of this newspaper article upon the jury, and to discern the proper course to pursue, has denied the motion to set aside the verdict. There is nothing in the record to indicate that the court erred in reaching this conclusion. *Burr* v. *Harty*, 75 Conn. 127, 130, 52 Atl. 724; *Loomis* v. *Perkins*, 70 Conn. 444, 447, 39 Atl. 797.

There is no error.

In this opinion the other judges concurred.