CATINO J. INTELISANO *v.* ROBERT L. GREENWELL, ADMINISTRATOR (ESTATE OF ALLAN B. GREENWELL)

ROBERT L. GREENWELL, ADMINISTRATOR (ESTATE OF ALLAN B. GREENWELL), ET AL. *v.* CATINO J. INTELISANO

KING, C. J., ALCORN, HOUSE, THIM and RYAN, JS.

Argued June 6—decided July 26, 1967

*Allan R. Johnson,* with whom, on the brief, was *Edward J. Holahan, Jr.,* for the appellant (plaintiff in the first case and defendant in the second case).

*Noel R. Newman,* for the appellee (defendant in the first case).

*Alfred R. Belinkie,* with whom was *Paul L. Blawie,* for the appellees (plaintiffs in the second case).

RYAN, J. These two cases, which were tried together before a jury, arose out of a two-car collision on the Merritt Parkway in the town of Trumbull. In the first case, the plaintiff, Catino J. Intelisano, alleged in his complaint that the collision and his resultant injuries and damages were caused by the negligence of the defendant's decedent in that (1) the decedent allowed his car to come to a stop and to remain stationary on the traveled portion of a heavily traveled road, even though he knew, or should have known, that in so doing he would endanger other persons lawfully using the highway; (2) he made no attempt to remove the car from the traveled portion of the highway, or to warn or signal approaching vehicles of the danger; and (3) he continued to operate his car when he knew that his gasoline supply was nearly exhausted, until it came to a stop. The answer denied these allegations of negligence and pleaded, by way of special defense, that Intelisano was contributorily negligent in that (1) he drove his car at an excessive rate of speed, having regard to the traffic, use, conditions of the highway and the visibility available to him; (2) he failed to keep his car under proper control; (3) he failed to keep a proper lookout; and (4), although he saw, or in the exercise of reasonable care should have seen, the decedent's car at a stop on the highway, he failed seasonably to apply his brakes or turn his vehicle so as to avoid a collision. In his reply, Intelisano denied the allegations of the special defense.

In the second action, the plaintiff Robert L. Greenwell, as administrator, alleged in his complaint that the injuries and death of his decedent were caused by the negligence of Intelisano, in that (1) he failed to keep his car under control;

(2) his brakes were defective; (3) he failed to apply his brakes in time to avoid a collision; (4) he failed to keep a proper lookout for other vehicles on the highway; (5) he failed to maintain a safe distance within which he could bring his vehicle to a halt without injury to others; (6) he failed to change the course of his vehicle when he knew, or should have known, that there was danger of collision with another vehicle or, on seeing that the decedent was in a position from which he could not extricate himself and having the ability with the means at hand to avoid the collision without injury to himself or others, he failed to exercise reasonable care. In a second count in the same action, Robert L. Greenwell, individually, made the same allegations of negligence on the part of Intelisano and claimed damages to the automobile, owned by him and operated by the decedent.

In his answer to the complaint in the second action, Intelisano denied all the allegations of negligence and, in a special defense of contributory negligence, recited the same specifications of negligence on the part of the decedent as he had alleged in his complaint in the first action. Greenwell, as administrator and individually, filed a reply, denying the allegations of the special defense.

The jury found the issues for the defendant in the first case and for the plaintiffs in the second case. Upon the refusal of the court to set aside the verdicts, Intelisano, as the plaintiff in the first case and as the defendant in the second case, appealed from the judgments rendered therein.

Of the numerous assignments of error, five are pursued in Intelisano's brief. The first claim of error relates to the granting of the plaintiffs' motion in the second case to reopen the argument

after the issues of liability and damages had been argued. The trial began with the first case, in which Attorney Allan R. Johnson represented Intelisano as the plaintiff and Attorney Noel R. Newman, together with Attorneys Paul L. Blawie and Alfred R. Belinkie, represented the defendant, Robert L. Greenwell, as administrator. In the second case, Blawie and Belinkie represented Greenwell as administrator and individually, and Johnson represented Intelisano as the defendant. The agreed order of argument was as follows: In the first case, Johnson would open and close, and Newman would make the defense argument. In the second case, Blawie and Belinkie would open and close, and Johnson would make the defense argument. The agreed order was followed in the first case. Blawie then made the opening argument in the second case. At this point, Johnson waived his argument. Blawie moved to reopen his argument on the grounds that he was entitled to a full hour and that, if the defendant had no intention of arguing, it should have been made known earlier so that counsel might have full time for argument. Johnson objected, but the court granted the motion. Johnson duly excepted on the ground that the sole purpose of the closing argument is to rebut the defendant's argument, and, since the defendant made no argument, his rights were prejudiced by the granting of the motion. At the conclusion of Blawie's argument, the court granted permission to Johnson to make his closing argument. This was declined, and no further arguments were made.

"The counsel in support . . . of the affirmative of an issue of fact, will be entitled to begin trial, and to open and close the argument. Where several issues are to be tried together, as to some of which

the plaintiff, and as to others the defendant, has the affirmative, the court shall determine, in its discretion, which party shall open and close." Practice Book § 232; *Dwyer* v. *Redmond*, 100 Conn. 393, 398, 124 A. 7. "The trial court is invested with a large discretion with regard to the arguments of counsel, and while its action is subject to review and control, we can interfere only in those cases where the discretion was clearly exceeded or abused to the manifest injury of some party. *James* v. *Bowen*, 83 Conn. 702, 706, 78 A. 420." *Cascella* v. *Jay James Camera Shop, Inc.*, 147 Conn. 337, 342, 160 A.2d 899. We need not pass on the validity of the reasons offered in support of the motion. There was no abuse of discretion by the trial court, particularly in view of the fact that defense counsel was given the opportunity by the court to argue at the conclusion of the plaintiffs' second argument.

Intelisano assigns error in the instructions of the trial court to the jury on pain and suffering as an element of damage in the second case, when there was no evidence that the decedent was conscious at any time after suffering injury. In its instructions, the court, after telling the jury that a policeman testified that the decedent was unconscious when he saw him immediately after the accident and that the doctor said he was unconscious "up till the time of his death", instructed the jury as follows: "[S]o then you will determine whether or not he was unconscious from the time of the accident till the time of the death, or for what length of time he was unconscious. You will recall the evidence on that, and if you find that . . . [the decedent] suffered any pain during that period as a result of his injury or death, and it was caused by the failure or negligence of the defendant Inteli-

sano, then you would make due allowance for that." The court also instructed the jury as follows: "For any pain and suffering of the decedent before his death, if you find that there was any, he could recover upon the same basis which he might have recovered had he lived."

The burden of proof on the issue of pain and suffering was on the decedent's administrator. As indicated by the finding, not only was there no evidence that the decedent suffered pain but the only evidence introduced was to the effect that the decedent was unconscious. "It is the duty of the court to submit to the jury no issue foreign to the facts in evidence. *Fleischer* v. *Kregelstein,* 150 Conn. 158, 160, 187 A.2d 241; *Miles* v. *Sherman,* 116 Conn. 678, 682, 166 A. 250." *Clements* v. *Goodkofsky,* 153 Conn. 125, 127, 214 A.2d 680. The trial court should have withdrawn from the jury's consideration any claim for pain and suffering. We note, however, that the decedent expired about fourteen hours after the accident and that the court, in its instructions, clearly stated to the jury the evidence concerning the decedent's unconscious state. "The whole problem of assessing damages for wrongful death, however, defies any precise mathematical computation. *O'Connor* v. *Zavaritis,* 95 Conn. 111, 117, 110 A. 878. Therefore, in a charge, theoretical lack of precision in the definition and application of any particular factor involved in the assessment of damages under our rule could seldom, in itself, constitute harmful error." *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 675, 136 A.2d 918. Under all the circumstances of the case, and in view of the entire charge on the issue, we cannot say that there was harmful error in this instruction. *Pareles* v. *McCarthy,* 149 Conn. 238, 244, 178 A.2d 155.

The third claim of error urged by Intelisano is that the trial court erred in charging the jury on the doctrine of the last clear chance in the second case, when there was no reasonable basis in the evidence for applying that doctrine. Intelisano makes no claim that the doctrine was not properly pleaded or that the charge as given to the jury was erroneously stated by the court. "The conditions necessary for the application of this doctrine are stated in *Fine* v. *Connecticut Co.*, 92 Conn. 626, 631, 103 A. 901, as follows: 'Situations coming within the operation of the principles attempted to be stated by the court are those in which four conditions co-exist, to wit: (1) that the injured party has already come into a position of peril; (2) that the injuring party then or thereafter becomes, or in the exercise of ordinary prudence ought to have become, aware not only of that fact but also that the party in peril either reasonably cannot escape from it or apparently will not avail himself of opportunities open to him for doing so; (3) that the injuring party subsequently has the opportunity by the exercise of reasonable care to save the other from harm; and (4) that he fails to exercise such care.'" *Ingraham* v. *Marotta*, 138 Conn. 36, 38, 81 A.2d 682.

The claims of error addressed to the charge are to be tested by the claims of proof as they appear in the finding. Practice Book § 635; *Morgillo* v. *Evergreen Cemetery Assn.*, 152 Conn. 169, 177, 205 A.2d 368; *Shulman* v. *Shulman*, 150 Conn. 651, 654, 193 A.2d 525; *Pischitto* v. *Waldron*, 147 Conn. 171, 176, 158 A.2d 168; *State* v. *Tryon*, 145 Conn. 304, 307, 142 A.2d 54. Upon the trial, Robert L. Greenwell, as administrator and individually, claimed to have proved the following: The plaintiff, Robert

L. Greenwell, was the owner of an Austin-Healy convertible car, which was being operated at about 7:45 a.m. on September 10, 1963, by his son, the decedent, in an easterly direction on the Merritt Parkway in Trumbull. The decedent was on his way to work and was driving in the right-hand, thirteen-foot lane when the car ran out of gasoline and stopped in that lane. The weather was clear, and the road was dry, straight and level for about 600 feet west of the place where the car came to a stop. At least four cars in the line of traffic to the rear of the Greenwell vehicle, in the right-hand lane, turned to the left and avoided striking the Greenwell car. Three of the four operators of these cars saw either the brake lights on the rear of the Greenwell vehicle or an arm signal being given by the decedent waving them into the left-hand lane. The decedent was unable to leave his car because of traffic immediately to the rear and passing his vehicle. It was not possible for the decedent to pull his car off the highway because of the presence in that area of fence posts, a rock ledge and vegetation about four and one-half feet from the southerly curb line. Catino J. Intelisano, the plaintiff in the first case and the defendant in the second case, was also on his way to work that morning and was driving his car in the right-hand lane behind four cars traveling in back of the Greenwell vehicle, thus his car was the fifth in line behind the Greenwell car. By reason of the negligence of Intelisano, in at least one or more of the ways set forth in the complaint in the second case, Intelisano did not turn his car to the left in time to avoid striking the Greenwell vehicle in the rear. As a result of the collision which ensued, the decedent, then twenty-four years of age, received traumatic injuries to his

head, neck and brain, which resulted in his death at about 9:55 p.m. on the same day. An interval of time elapsed between the collision and the time the first witness noted the condition of the decedent. It was agreed that the car owned by Robert L. Greenwell was damaged to the extent of $800. The Intelisano car continued on after striking the Greenwell car, went onto the center isle, struck a tree and stopped, as a result of which Intelisano suffered personal injuries.

On these claims of proof there was an adequate basis for submitting to the jury the issue of the decedent's right to recover under the last clear chance doctrine, and the court was not in error in so charging. *Vignone* v. *Pierce & Norton Co.,* 130 Conn. 309, 316, 33 A.2d 427.

In his fourth assignment of error, Intelisano claims that the trial court erred in failing to give further instructions on the doctrine of the last clear chance in response to the following written questions submitted by the jury: "Assumed that contributory negligence is found against the defendant Allen Greenwell, and that negligence is found against the defendant (in the second suit) Intelisano, what is the law and what subsequent damages may be awarded under the doctrine of last chance? We are unable to recall your specific instructions on this point."

After the jury were recalled to the courtroom, the court repeated the question submitted and instructed the jury briefly on the question of damages.

Intelisano excepted to the instructions on the grounds that the court had not answered all the elements of the question propounded and that there was some confusion in the minds of the jurors as

to the doctrine of the last clear chance. At this point counsel for Intelisano requested that the jury be instructed again on the elements of the doctrine. He also claimed that the jury might be inquiring as to whether or not the doctrine of the last clear chance applied to both cases.

The jury's question was obviously directed to the second case only. Since there was no assignment of error attacking the accuracy of the charge on the doctrine of the last clear chance as previously given by the court, we must conclude that the jury were properly instructed on the applicable principles of law and that they followed these principles. *Dillon* v. *Tarantino,* 149 Conn. 377, 380, 179 A.2d 833; *Greene* v. *DiFazio,* 148 Conn. 419, 423, 171 A.2d 411; *Salvatore* v. *Hayden,* 144 Conn. 437, 440, 133 A.2d 622. It must also be assumed that, since the doctrine was neither pleaded nor claimed to have any application to the first case, the court so instructed the jury.

The jury's request for instructions embraced two questions: (1) If it is assumed that the decedent was chargeable with contributory negligence and that Intelisano was negligent, what is the legal effect of such a finding under the last clear chance doctrine? (2) What is the rule of damages? The court undertook to answer the second question, assuming that the jury found that the last clear chance doctrine applied. No further instructions were given to explain the doctrine to the jury, although counsel requested that this be done. "We have held that when it appears, upon an inquiry by the jury, that they have failed to understand a principle of law stated in the charge, it is the duty of the court, upon the request of counsel, to further explain the doctrine in question. *Annes* v. *Connecti-*

*cut Co.,* 107 Conn. 126, 131, 139 Atl. 511." *Montagna* v. *Jewell,* 119 Conn. 178, 181, 175 A. 570. It is apparent from the question propounded by the foreman that the jury were in doubt as to the legal effect of a finding of contributory negligence as against the decedent and a finding of negligence on the part of Intelisano in the light of the last clear chance doctrine. "In this dilemma, notwithstanding what the court had already said to the jury, it was plainly incumbent upon the court to give full and adequate instructions to meet all phases of the situation which the question presented." *Annes* v. *Connecticut Co.,* supra, 131. The failure of the trial court properly to instruct the jury constituted harmful error to Intelisano as the defendant in the second case. It did not in any respect affect or prejudice Intelisano as the plaintiff in the first case.

The final assignment of error relates to the procedures followed and the instructions given to the jury by the court after they returned a verdict for Intelisano, the plaintiff in the first case, for "no dollars damages." The court, without requiring that the verdict be read aloud, then gave further instructions to the jury, the pertinent portion of which was as follows:

"The Court: Well, members of the jury, I can't accept this verdict because you found for the plaintiff Catino J. Intelisano and you have given him no dollars damages. If your finding is that he suffered no damages, then it is a defendant's verdict.

"The Foreman: I regret this. It was extremely difficult to interpret.

"The Court: Well, you will recall that I charged you in the first case and if you found that Mr. Intelisano is not entitled to recover, you would

come in with a defendant's verdict. If you found that he was entitled to recover, you would come in with a plaintiff's verdict, and then you would insert the amount of damages. So, I will send you back to your jury room and ask you to reconsider that, and then I will have a new form made up.

"Will you have a new form made up?

"The Clerk: I don't know if there's anybody there or not.

"The Court: Unless you're willing to have the —

"Mr. Johnson: Your Honor, shouldn't there be two verdict forms?

"The Court: Two verdict forms, plaintiff's verdict, and a defendant's verdict, and sign one, the appropriate one, as I told you. You will recall, when I took you through the Charge, I said if the plaintiff, Mr. Intelisano, in his case, is not entitled to recover, you would have a defendant's verdict. In other words, you will have to have two verdicts in this case.

"The Foreman: Yes.

"The Court: One in the case of Intelisano versus Greenwell, and one in the case of Greenwell versus Intelisano.

"Now, I can send this back to you, I can send you back in, and I do not know what you are going to do, but I will give this back to you and will you please return to the jury room and reconsider."

Intelisano excepted to the court's instructions on the ground that the jury were told that if they found no damages, it must be a defendant's verdict and that the court should have instructed the jury that, if they found liability in favor of Intelisano, they must award him damages. The jury retired and later brought in a verdict for the defendant in the first case which the court accepted. Intelisano's

exception is not well taken. The court instructed the jury that, if Intelisano was not entitled to recover, the verdict should be for the defendant and that, if they found for Intelisano, it should be a plaintiff's verdict and the amount of damages should be inserted. The jury must have understood from what the court said that they were free to do as they saw fit in reconsidering the verdict. The instructions given, relating as they did to the original charge, were sufficient and adequate to guide the jury.

Intelisano also claims that the court should have had the verdict in the first case read aloud before instructing the jury to reconsider. His claim is correct. The proper procedure is outlined in *Watertown Ecclesiastical Society's Appeal*, 46 Conn. 230, 232. Needless deviations from this procedure invite appeals, although failure to follow it is not necessarily reversible error. *Gillette* v. *Schroeder*, 133 Conn. 682, 685, 54 A.2d 498; *Magoohan* v. *Curran*, 71 Conn. 551, 554, 42 A. 656. In any event, Intelisano failed to take timely exception and is now precluded from raising the question on appeal. *Towhill* v. *Kane*, 147 Conn. 191, 193, 158 A.2d 251.

Intelisano makes the further claim that the court erred in resubmitting to the jury the marked plaintiff's verdict form which the court had refused to accept. Better procedure would have been to give fresh forms to the jury. *King* v. *Haynes*, 114 Conn. 396, 397, 158 A. 915. At the time this occurred the hour was late, there was no one in the clerk's office available to make out new forms, and the court specifically informed the jury on the use of the verdict forms. There is no indication that the jury were confused or misled, and there was therefore no prejudice to Intelisano as plaintiff in the first case.

There is no error in the first case; there is error in the second case, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.