RICKY BERRY *v.* EDWARD M. LOISEAU, SR., ET AL.
(14282)
(14283)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and BERDON, Js.

Argued April 1—decision released August 12, 1992

*Louis R. Pepe,* with whom was *Ann F. Bird,* for the appellant-appellees in Docket No. 14282 and the appellees in Docket No. 14283 (defendants).

*William M. Laviano,* with whom was *Joseph C. Locascio,* for the appellee-appellant in Docket No. 14282 and the appellant in Docket No. 14283 (plaintiff).

GLASS, J. The defendant Edward M. Loiseau, Jr., appeals from the trial court's judgment rendered on the jury verdicts on the second and sixth counts of the plaintiff's complaint, its award of punitive damages to the plaintiff, and its refusal to set aside the verdicts or to remit the jury's compensatory damages award. The plaintiff, Ricky Berry, cross appeals challenging certain jury instructions given by the trial court and the verdict directed in favor of the named defendant, Edward M. Loiseau, Sr., on the first count of the plaintiff's complaint. The plaintiff appeals separately from the trial court's ruling limiting the amount of punitive damages awarded on the sixth count of the complaint to one third of the jury's verdict on that count, in accordance with General Statutes § 52-251c. We affirm the judgment of the trial court with respect to the defendant Edward M. Loiseau, Jr.'s appeal and the first claim of the plaintiff's cross appeal. We reverse the judgment of the trial court with respect to the second

claim of the plaintiff's cross appeal and we reverse, in part, with respect to the plaintiff's separate appeal.

The plaintiff brought this action against his former employer, Bird Electron Beam Corporation (Bird), Bird's president, Edward M. Loiseau, Sr. (Loiseau, Sr.), and Bird's vice president, Edward M. Loiseau, Jr. (Loiseau, Jr.). In a six count complaint, the plaintiff alleged, respectively, false imprisonment, assault and battery, wrongful termination, breach of an implied covenant of good faith, defamation and intentional infliction of emotional distress. Bird and Loiseau, Sr., filed a seven count counterclaim, alleging, respectively, misappropriation of trade secrets, breach of a non-disclosure agreement, intentional interference with a business relationship, breach of fiduciary duty, conversion, corporate defamation and personal defamation. After a jury trial, the plaintiff prevailed on the counts of his complaint alleging assault and battery, wrongful termination, breach of an implied covenant of good faith and intentional infliction of emotional distress. The trial court directed verdicts for the defendants on the false imprisonment count, on which the jury was hung, and the defamation count. The trial court set aside the jury's verdicts for the plaintiff on the counts alleging wrongful termination and breach of an implied covenant of good faith. The trial court accepted the jury's verdicts in the amount of $7500 on the assault and battery count and $50,000 on the intentional infliction of emotional distress count. The plaintiff filed a motion for a retrial of the false imprisonment count.

With respect to the defendants' counterclaim, the plaintiff prevailed on all counts but those alleging breach of fiduciary duty, corporate defamation and personal defamation. The jury returned verdicts: for Bird on the fourth count, alleging breach of fiduciary duty of loyalty, in the amount of one dollar; for Bird on the sixth count, alleging corporate defamation, in the

amount of one dollar; and for Loiseau, Sr., on the seventh count, alleging personal defamation, in the amount of one dollar. The plaintiff filed a motion to set aside the jury's verdicts on counts four, six and seven of the defendants' counterclaim. The trial court denied the plaintiff's motion.

The trial court submitted interrogatories to the jury, asking whether punitive damages were warranted on the plaintiff's intentional infliction of emotional distress count, and on the sixth and seventh counts of the defendants' counterclaim, alleging corporate defamation and personal defamation. The jury responded in the affirmative. Subsequently, the trial court adjudged that the plaintiff should recover of Loiseau, Jr., $57,500, plus punitive damages, to be determined in a subsequent proceeding, and that Bird and Loiseau, Sr., should recover of the plaintiff four dollars[1] plus punitive damages, to be determined in a subsequent proceeding.

After a hearing, the trial court awarded punitive damages to the plaintiff to be recovered of Loiseau, Jr., in the amount of $16,667, and to the defendants, Bird and Loiseau, Sr., to recover of the plaintiff in the amount of $50,000. Loiseau, Jr., appealed and the plaintiff cross appealed to the Appellate Court from the judgment rendered on the complaint, and the plaintiff appealed separately to the Appellate Court from the judgment rendered on the counterclaim. We transferred the appeals and the cross appeal to ourselves from the Appellate Court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, Loiseau, Jr., claims that the trial court improperly: (1) permitted the plaintiff's expert witness, Dr. Harry Powers Dunne, and lay witnesses, David

---

[1] Although the jury awarded Bird and Loiseau, Sr., only $3, the record indicates the trial court's judgment as $4.

Gamage and Doreen DeNomme, to testify when the plaintiff had failed to disclose their names in response to the defendants' interrogatories, and had failed to disclose the name of his expert witness in accordance with Practice Book § 220 (D); (2) permitted the plaintiff's witness, Gamage, to testify to "prior bad acts" of Loiseau, Jr., when such testimony was inadmissible character evidence offered only to show Loiseau, Jr.'s propensity to commit such acts; (3) failed to set aside the jury's verdicts on the counts of the plaintiff's complaint alleging assault and battery and intentional infliction of emotional distress; (4) failed to remit the jury's award of compensatory damages on the intentional infliction of emotional distress count; (5) awarded the plaintiff punitive damages when there was no evidence to support such an award; and (6) failed to declare a mistrial on the basis that plaintiff's counsel was guilty of misconduct during the course of the trial, which prejudiced the defendants in the eyes of the jury.

In his cross appeal, the plaintiff claims that the trial court improperly: (1) failed to instruct the jury, with respect to the defamation counts of the defendants' counterclaim, that the plaintiff enjoyed a qualified privilege to report the defendants' business improprieties to public authorities, and, therefore, the defendants had the burden of proving malice in order to prevail on these counts; and (2) directed a verdict in favor of Loiseau, Sr., on the false imprisonment count of the plaintiff's complaint when the jury was unable to reach a verdict on that count. Finally, in his separate appeal, the plaintiff claims that the trial court improperly: (1) measured the amount of punitive damages awarded him by the amount of attorney's fees he had incurred; and (2) applied General Statutes § 52-251c (b) to limit the amount of punitive damages awarded to one third of the jury's verdict on the sixth count of the plaintiff's complaint.

The jury could reasonably have found the following facts. Bird is an electron beam welding shop that performs welding services for various federal defense contractors. From September, 1984, through March 7, 1987, the plaintiff was employed by Bird, during which time he was trained and certified as an electron beam welder. During the course of the plaintiff's employment at Bird, he was subjected to repeated physical abuse by Loiseau, Jr., including being punched and choked. The plaintiff observed Bird employees engage in improper procedures, including the production and shipping to Bird's customers of inferior welds, the scrapping of parts and the use of noncertified welders to perform work under the name of a certified welder. The plaintiff accumulated data on the improper procedures employed at Bird. As a result of the plaintiff's activities, Loiseau, Sr., and Loiseau, Jr., confronted the plaintiff on March 7, 1987, after which date the plaintiff did not return to work at Bird. Thereafter, the plaintiff discussed the alleged improprieties of Bird and Loiseau, Sr., with the Federal Bureau of Investigation (FBI) and the United States Department of Defense and with other persons in the electron beam welding business. Additional facts will be detailed in relation to specific issues.

I

We first dispose of the Loiseau, Jr.'s claims on appeal.

A

The defendant Loiseau, Jr., first claims that the trial court improperly permitted the plaintiff's expert witness, Dr. Harry Powers Dunne, and lay witnesses, David Gamage and Doreen DeNomme, to testify when the plaintiff had failed to disclose their names in response to the defendants' interrogatories and had failed to disclose the expert's name in compliance with

Practice Book § 220 (D).[2] The plaintiff contends that the trial court properly allowed Dunne to testify because it had granted permission to the defendants, during voir dire, to present two previously undisclosed

[2] Practice Book § 220 provides: "Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Sec. 218 and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

"(A) (1) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (2) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to paragraph (C) of this section, concerning fees and expenses as the court may deem appropriate.

"(B) A party may discover facts known or opinions held by an expert who had been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial only as provided in Sec. 229 or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

"(C) Unless manifest injustice would result, (1) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under paragraphs (A) (2) and (B) of this section; and (2) with respect to discovery obtained under paragraph (A) (2) of this section the court may require, and with respect to discovery obtained under paragraph (B) of this section the court shall require, the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

"(D) In addition to and notwithstanding the provisions of subsections (A), (B) and (C) of this section, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. Each defendant shall disclose the names of his or her experts in like manner within 120 days from the date the case is claimed to a trial list. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown."

witnesses. The plaintiff contends further that Gamage and DeNomme were properly permitted to testify as rebuttal witnesses. We conclude that the trial court acted within its discretion in admitting the testimony of Dunne, Gamage and DeNomme.

The plaintiff called Dunne, a psychologist, to testify in support of his claim that he had suffered physical damage and emotional distress as a result of Loiseau, Jr.'s actions. The plaintiff had not disclosed Dunne's name prior to trial in response to the defendants' interrogatories or in compliance with Practice Book § 220 (D). During voir dire, the plaintiff's attorney informed defense counsel that he intended to introduce expert testimony concerning the plaintiff's emotional distress claim and economic damages. On the first day of trial, the defendants filed a motion in limine to exclude such expert testimony on the basis that the plaintiff had failed to disclose any experts in response to interrogatories or pursuant to Practice Book § 220 (D). After hearing argument, the trial court denied the defendants' motion. In so doing, the trial court reasoned that the defendants had disclosed two witnesses for the first time during voir dire.[3] The trial court, therefore, permitted Dunne to testify in exchange for allowing the defendants' two previously undisclosed witnesses to testify.

After the defendants deposed Dunne, they renewed their motion in limine to exclude his testimony. The defendants argued that they had inadequate time to

[3] The plaintiff contends that the defendants' formerly undisclosed witnesses were experts on the subject of quality control in the electron beam welding business. Loiseau, Jr., argues, to the contrary, that these witnesses were fact witnesses and, therefore, that the trial court improperly allowed Dunne to testify in exchange for allowing their testimony. Because the reasoning of the trial court in allowing the "trade-off" did not depend on whether the defendants' witnesses were experts, we reject Loiseau, Jr.'s argument.

obtain and prepare effectively rebuttal witnesses on the plaintiff's emotional distress claim. The trial court again denied the defendants' motion but granted them time to retain an expert on the issues of emotional distress and economic damages. The trial court ordered that the defendants' expert be permitted, prior to testifying, to examine the plaintiff and administer several psychological perspective tests to him. The trial court also ordered that the plaintiff be permitted to depose the defendants' expert during the course of the trial.

The plaintiff called Gamage and DeNomme, former employees of Bird, to testify in support of his assault and battery and intentional infliction of emotional distress claims against Loiseau, Jr. In interrogatories served on the plaintiff nearly two years prior to trial, the defendants had requested the identity of each witness that the plaintiff intended to call and the substance and basis of his or her testimony. The plaintiff had responded by stating that "[n]o witnesses have been selected at this time." The plaintiff never supplemented his response. Because Gamage and DeNomme had never been disclosed in response to the defendants' interrogatories, the defendants objected when the plaintiff, several days into the trial, announced his intention to call them. The plaintiff had mentioned Gamage in response to the defendants' interrogatories asking for the disclosure of witnesses to Bird's and Loiseau, Sr.'s alleged business improprieties, but neither Gamage nor DeNomme had been identified in response to interrogatories regarding witnesses to Loiseau, Jr.'s alleged physical abuse of the plaintiff.

The plaintiff's attorney argued to the trial court that the failure to disclose Gamage's name in response to interrogatories regarding Loiseau, Jr.'s actions was justified because he had become aware that Gamage might have relevant testimony on that issue only after Loiseau, Sr., had testified in the plaintiff's case-in-chief.

The plaintiff's attorney also represented to the trial court that he had learned only several days earlier that DeNomme had information regarding the plaintiff's case. He offered DeNomme as a rebuttal witness to impeach the testimony of Loiseau, Sr.

Over the defendants' objection, the trial court permitted Gamage and DeNomme to testify. In permitting Gamage to testify, the court reasoned that Gamage had been named as a witness in response to the defendants' interrogatories and, therefore, was not a "surprise" witness. With respect to its decision to allow DeNomme's testimony, although the trial court did not offer a specific reason on the record, it noted that DeNomme's name had arisen during Loiseau, Sr.'s testimony two days earlier.

The plaintiff's attorney represented to the trial court that he had not contacted Gamage until one or two days before Gamage testified and that he had contacted DeNomme for the first time only a few days before the trial. Gamage testified, on cross-examination, however, that an attorney from the law firm of the plaintiff's attorney had interviewed him more than one year prior to the trial. DeNomme testified that she had been contacted by the plaintiff five days prior to trial and had been served with a subpoena on the day before the trial began. The defendants, arguing that the plaintiff's attorney had made misrepresentations to the trial court, moved to strike the testimony of Gamage and DeNomme after each of them had testified. The trial court denied the defendants' motions.

The defendant Loiseau, Jr., argues that the trial court improperly admitted the testimony of Gamage, DeNomme and Dunne, thereby fatally prejudicing his case. The substance of the testimony that the defendants sought to exclude was as follows. Gamage testified that while he was employed by Bird, he and other

employees had engaged in "horseplay" with Loiseau, Jr., which had at times "got out of hand." Gamage also testified that, prior to the plaintiff's employment at Bird, he had observed Loiseau, Jr., violently assault another employee, Mike Pellerman, by punching him until he fell to the ground and choking him. Finally, Gamage testified that after the resolution of a lawsuit brought against him by Bird to enforce a noncompetition agreement, Loiseau, Jr., had threatened him over the telephone. DeNomme testified that she had observed Loiseau, Jr., punch the plaintiff. She testified further that she believed that the plaintiff had not consented to the touching because he had run from Loiseau, Jr. Dunne, the plaintiff's expert, testified that as a result of the alleged mistreatment by Loiseau, Sr., and Loiseau, Jr., the plaintiff suffered from posttraumatic stress disorder. In particular, Dunne testified that the plaintiff's condition had been caused by Loiseau, Sr.'s threatening him with a gun and by Loiseau, Jr.'s physical abuse of him.

We first address Loiseau, Jr.'s claim that the trial court improperly denied the motion in limine requesting the exclusion of Dunne's testimony. The defendants sought the exclusion of Dunne's testimony on the basis that the plaintiff had failed to respond to interrogatories requesting the disclosure of expert witnesses in accordance with Practice Book § 220 (A) (1) and had failed to comply with § 220 (D). Pursuant to § 220 (A) (1), a discovering party may, through interrogatories, require another party to disclose the identity of any expert witness he plans to call at trial and the substance and basis of the expert's opinions. See footnote 2, supra. If a party fails to comply with a discovery request made under § 220 (A) (1), the trial court may, upon motion of the discovering party made pursuant to Practice Book § 231, "make such order as the ends of justice require," including "[t]he entry of an order

prohibiting the party who has failed to comply from introducing designated matters in evidence."[4] The trial court similarly may impose sanctions, upon motion, if a party fails to comply with the continuing duty to disclose imposed by Practice Book § 232.[5] Section 220 (D), on which Loiseau, Jr., primarily relies for his claim that Dunne's testimony should have been excluded, provides that a trial court may, in its discretion, permit an expert

---

[4] Practice Book § 231 provides: "If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead, or has failed to respond to requests for production or for disclosure of the existence and contents of an insurance policy or the limits thereof, or has failed to submit to a physical or mental examination, or has failed to comply with a discovery order made pursuant to Sec. 230A, or has failed to comply with the provisions of Sec. 232, or has failed to appear and testify at a deposition duly noticed pursuant to this chapter, or has failed otherwise substantially to comply with any other discovery order made pursuant to Secs. 222, 226, and 229, the court may, on motion, make such order as the ends of justice require.

"Such orders may include the following:

"(a) The entry of a nonsuit or default against the party failing to comply;

"(b) The award to the discovering party of the costs of the motion, including a reasonable attorney's fee;

"(c) The entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(d) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence;

"(e) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal.

"The failure to comply as described in this section may not be excused on the ground that the discovery is objectionable unless written objection as authorized by Secs. 222, 226, and 229 has been filed."

[5] Practice Book § 232 provides: "If, subsequent to compliance with any request or order for discovery and prior to or during trial, a party discovers additional or new material or information previously requested and ordered subject to discovery or inspection or discovers that the prior compliance was totally or partially incorrect or, though correct when made, is no longer true and the circumstances are such that a failure to amend the compliance is in substance a knowing concealment, he shall promptly notify the other party, or his attorney, and file and serve in accordance with Sec. 120 a supplemental or corrected compliance."

who has not been disclosed within the time limits set forth, to testify "for good cause shown." See footnote 2, supra.

Loiseau, Jr., argues that the trial court abused its discretion in permitting Dunne to testify. Specifically, he contends that the plaintiff failed to establish good cause for his failure to disclose the name of his expert, as required by § 220 (D). Neither § 220 (D) nor the cases interpreting it define what constitutes "good cause." The language of the rule, however, makes clear that the trial court is to exercise broad discretion in determining whether good cause exists in a given case. As we have stated: "A trial court's decision on whether to impose the sanction of excluding the testimony of a party's expert witness rests within the court's sound discretion. . . . The action of the trial court is not to be disturbed unless it has abused its broad discretion, and in determining whether there has been such abuse every reasonable presumption should be made in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Pool* v. *Bell,* 209 Conn. 536, 541, 551 A.2d 1254 (1989); see also *Mulrooney* v. *Wambolt,* 215 Conn. 211, 221–22, 575 A.2d 996 (1990).

In the present case, the defendants revealed two witnesses, George Bakas and George Kolvek, for the first time during voir dire. Although the subject matter of these witnesses' testimony differed from that of the plaintiff's expert, we are unable to conclude that the trial court abused its discretion in allowing Dunne to testify in exchange for permitting Bakas and Kolvek to testify. We are persuaded that the trial court's allowance of time for the defendants to retain their own expert and for both parties to depose each other's expert witnesses adequately protected the defendants'

interests. The defendants were further protected by the fact that the trial court allowed their expert witness, prior to testifying, to examine and to administer a battery of psychological tests to the plaintiff.

While we do not condone the plaintiff's failure adequately to respond to the defendants' interrogatories or to comply with § 220 (D), "[u]nder these circumstances, it cannot be said that the [defendants were] prejudiced or that the trial court abused its discretion in ruling as it did. Although sanctions should be imposed to deter those who would use trial-by-ambush tactics . . . the trial court is in the best position to assess the intent behind the behavior of the offending party and, therefore, its decision must be given great weight and deference." (Citations omitted.) *Alpha Crane Service, Inc.* v. *Capitol Crane Co.,* 6 Conn. App. 60, 65–66, 504 A.2d 1376, cert. denied, 199 Conn. 807, 508 A.2d 769 (1986). Accordingly, we conclude that the trial court acted within its discretion in permitting Dunne to testify.

We next address the propriety of the trial court's rulings allowing the plaintiff's lay witnesses, Gamage and DeNomme, to testify. Pursuant to Practice Book §§ 218 and 223, a party may, through written interrogatories, discover information material to the subject matter involved in a pending action, which is not privileged and which is within the knowledge of the party to whom the interrogatories are addressed.[6] Failure to comply

---

[6] Practice Book § 218 provides in relevant part: "In any civil action, in any probate appeal, or in any administrative appeal where the court finds it reasonably probable that evidence outside the record will be required, a party may obtain in accordance with the provisions of this chapter discovery of information or disclosure, production and inspection of papers, books or documents material to the subject matter involved in the pending action, which are not privileged, whether the discovery or disclosure relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, and which are within the knowledge, possession or power of the party or person to whom the discovery is addressed.

with such a discovery request is subject to sanctions by the trial court, upon motion of the discovering party in accordance with Practice Book §§ 231 and 232, including an order excluding designated matters from evidence. See footnotes 4 and 5, supra. As noted in our discussion of the trial court's admission of Dunne's testimony, however, a trial court enjoys broad discretion in deciding whether to exclude evidence based on failure to comply with a discovery request. See *Pool* v. *Bell,* supra.

In the present case, we cannot say that the trial court abused its discretion in allowing Gamage and DeNomme to testify. The record reveals that the trial court, in allowing the testimony of these witnesses, concluded that neither one was a "surprise" witness and, therefore, that the admission of their testimony did not unduly prejudice the defendants. While we agree with the defendant's general contention that compliance with the rules of discovery should be encouraged, we are persuaded that the trial court acted within its discretion in concluding that no sanction was necessary under Practice Book §§ 231 or 232. We conclude, furthermore, that the trial court did not abuse its discretion in denying the defendants' motions to strike the testimony of Gamage and DeNomme, made on the basis that the plaintiff's attorney had falsely represented to the court his prior contacts with the witnesses.

Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action and if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure."

Practice Book § 223 provides in relevant part: "(a) In any civil action, in any probate appeal, or in any administrative appeal where the court finds it reasonably probable that evidence outside the record will be required, any party may serve in accordance with Sec. 120 written interrogatories upon any other party to be answered by the party served. . . . Interrogatories may relate to any matters which can be inquired into under Sec. 217 and the answers may be used at trial to the extent permitted by the rules of evidence."

B

The defendant Loiseau, Jr., next claims that the trial court improperly permitted Gamage to testify to certain "prior bad acts" of Loiseau, Jr., when such testimony was inadmissible character evidence offered only to show his propensity to commit such acts. We conclude that the trial court properly admitted Gamage's testimony regarding Loiseau, Jr.'s prior conduct.

Gamage testified that Loiseau, Jr., had assaulted Pellerman, a Bird employee, prior to the plaintiff's employment at Bird. Gamage testified further that Loiseau, Jr., had made a threatening phone call to him after the resolution of a lawsuit brought against him by Bird. Loiseau, Jr., argues that Gamage's testimony was inadmissible character evidence that irrevocably prejudiced his case. Specifically, he contends that Gamage's testimony was irrelevant to the defense of consent to the plaintiff's charges of assault and battery and intentional infliction of emotional distress. Loiseau, Jr., contends further that, even if Gamage's testimony was assumed to be relevant, the trial court improperly admitted it, its prejudicial impact having outweighed its probative value. The plaintiff acknowledges that Gamage's testimony was prejudicial to Loiseau, Jr. He argues, however, that any prejudice was outweighed by the probative value of the testimony on the issue of Loiseau, Jr.'s defense that his physical contact with the plaintiff had been consensual.

Loiseau, Jr.'s defense to the plaintiff's claims of intentional physical abuse was that employees in Bird's shop, including the plaintiff, had willingly participated with Loiseau, Jr., in certain rough "horseplay," such as punching and karate. The plaintiff sought, therefore, to introduce the testimony of Gamage regarding Loiseau, Jr.'s prior assaultive and threatening behavior

toward other Bird employees. The defendants objected, but the trial court admitted the testimony. After Gamage testified, the defendants made a timely motion to strike, which the trial court denied.

"We may usefully begin our inquiry on this issue by restating the two-step analysis that a trial court must conduct in deciding whether to admit evidence of a party's collateral misconduct. The court first must determine whether the evidence is relevant and material to an issue properly before the court. . . . Evidence of other misconduct, although not ordinarily admissible to prove the bad character or criminal tendencies of the accused, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity . . . . Second, after a finding that the evidence is relevant, the trial court must then decide whether its admission is warranted because its probative value outweighs its prejudicial effect. . . ." (Citations omitted; internal quotation marks omitted.) *Russell* v. *Dean Witter Reynolds, Inc.,* 200 Conn. 172, 191–92, 510 A.2d 972 (1986).

In the present case, the trial court did not explicitly find that the proffered testimony was relevant and that its probative value exceeded its prejudicial impact. The parties, however, addressed both prongs of the required analysis in argument before the trial court. Accordingly, we may infer such findings from the trial court's decision to admit the evidence. "Because of the latitude we accord trial courts on questions of relevance . . . and [b]ecause of the difficulties inherent in [the process of balancing probative value and prejudicial effect], the trial court's decision [to admit evidence of other misconduct] will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in

favor of the trial court's ruling. . . ." (Citations omitted; internal quotation marks omitted.) Id., 192–93. Applying these standards to the facts of this case, we conclude that the trial court properly admitted the testimony of Gamage regarding Loiseau, Jr.'s collateral misconduct.

We first consider the trial court's conclusion that Gamage's testimony was relevant. "[E]vidence that an individual is the kind of person who tends to behave in certain ways almost always has some value as circumstantial evidence as to how [he] acted (and perhaps with what state of mind) in the matter in question." 1 C. McCormick, Evidence (4th Ed.) § 188, p. 793. The plaintiff offered Gamage's testimony to show the absence of consent to Loiseau, Jr.'s physical contact with him as well as to refute Loiseau, Jr.'s claim that any physical contact that occurred in the Bird shop was merely "horseplay" in which employees willingly participated. Given the substantial deference we accord the trial court's ruling on relevance, we cannot say that Gamage's testimony was not relevant for the purpose for which it was offered.

The question of whether the probative value of the evidence outweighed its prejudicial effect is a closer one. "[E]vidence of character in any form—reputation, opinion from observation, or specific acts—generally will not be received to prove that a person engaged in certain conduct or did so with a particular intent on a specific occasion, so-called circumstantial use of character. The reason is the familiar one of prejudice outweighing probative value. Character evidence used for this purpose, while typically being of relatively slight value, usually is laden with the dangerous baggage of prejudice, distraction, time consumption and surprise." 1 C. McCormick, supra, § 188, p. 793. The plaintiff concedes that Gamage's testimony was "no doubt prejudicial" to Loiseau, Jr. As the Appellate Court has

stated, however, "[e]vidence that is inadmissibly prejudicial is not to be confused with evidence that is merely damaging. . . . All evidence adverse to a party is, to some degree, prejudicial." (Citation omitted.) *Chouinard* v. *Marjani,* 21 Conn. App. 572, 576, 575 A.2d 238 (1990). Thus, "[t]o be excluded, the evidence must create prejudice that is *undue* and so great as to threaten an injustice if the evidence were to be admitted." (Emphasis in original.) Id.

The trial court concluded that the probative value of Gamage's testimony exceeded its prejudicial impact. "It cannot be said that on the facts of this case the conclusion reached by the [trial court] after balancing these factors was in error." *State* v. *Martin,* 170 Conn. 161, 166, 365 A.2d 104 (1976). We are persuaded that "[t]he evidence was neither so remote nor so prejudicial that its significance upon the issues of the case could not be entrusted to the jury." *Batick* v. *Seymour,* 186 Conn. 632, 638, 443 A.2d 471 (1982).[7]

## C

The defendant Loiseau, Jr., also claims that the trial court improperly failed to set aside the jury's verdicts

---

[7] Loiseau, Jr., relies on this court's decision in *Richmond* v. *Norwich,* 96 Conn. 582, 593–98, 115 A. 11 (1921), in support of his argument that Gamage's testimony was inadmissible character evidence. Our conclusion in *Richmond,* however, is inapposite to the present case. In *Richmond,* the plaintiff sued the city of Norwich for its negligence in hiring a certain guard at the city's reservoir. The plaintiff had been shot by that guard while attempting to drive into the reservoir. The trial court, over the defendant's objection, admitted the testimony of a certain witness regarding the guard's threatening behavior toward him *after* the incident that was the subject of the lawsuit. This court concluded that the trial court had erroneously admitted that witness' testimony because its prejudicial impact outweighed its probative value. Alternatively, this court stated that the defendant might have objected to the evidence on the ground of relevance, in that the action was for negligence and not for an intentional tort. In the present case, Gamage's testimony concerned Loiseau, Jr.'s *past* acts and was offered to prove *intentional* tortious conduct. The trial court could reasonably have concluded that the proffered evidence was both relevant and probative on the issue of the plaintiff's consent to Loiseau, Jr.'s actions.

as to the second and sixth counts of the plaintiff's complaint because they were not supported by the evidence. Loiseau, Jr., asserts that the plaintiff's testimony was the *only* evidence presented in support of his claims of assault and battery and intentional infliction of emotional distress. Loiseau, Jr.'s argument, in essence, is that the plaintiff's testimony alone was insufficient as a matter of law to support the jury's verdicts on the second and sixth counts of the complaint. We reject this claim.

Loiseau, Jr.'s claim must fail for two reasons. First, the plaintiff offered the testimony of witnesses other than himself, specifically Gamage and DeNomme, in support of his claim that the physical contact to which he was subjected by Loiseau, Jr., was not voluntary "horseplay." In addition, the plaintiff offered the expert testimony of Dunne regarding the lasting effects of Loiseau, Jr.'s treatment of him. Second, and more importantly, however, Loiseau, Jr.'s argument wrongly assumes that the plaintiff was required to present more than his own testimony to prevail on the second and sixth counts of his complaint. As the plaintiff states in his brief on appeal: "The testimony of Berry as opposed to that of Loiseau [Jr.] was the essence of the trial. The jury believed Berry and did not believe Loiseau Jr. It is as simple as that."

We have stated that "[l]itigants have a constitutional right to have factual issues resolved by the jury." *Mather* v. *Griffin Hospital,* 207 Conn. 125, 138, 540 A.2d 666 (1988). This right encompasses the right to have the jury and not the court decide issues of fact as to which reasonable people may reach different conclusions. Id. Thus, the role of the trial court on a motion to set aside the jury's verdict is not to sit as a seventh juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the ver-

dict that it did. Id., 139; see *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.,* 216 Conn. 200, 206, 579 A.2d 69 (1990). "The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness." *Mather* v. *Griffin Hospital,* supra. We conclude that the trial court did not abuse its discretion in denying the defendants' motion to set aside the jury's verdicts on the second and sixth counts of the plaintiff's complaint.

## D

The defendant Loiseau, Jr., next challenges the trial court's refusal to remit the jury's award of compensatory damages on the sixth count of the plaintiff's complaint. Loiseau, Jr., contends that the jury's award of $50,000 for intentional infliction of emotional distress was "plainly excessive in light of the evidence presented and fell far outside the limits of fair and reasonable compensation for any prior injuries, because [the] plaintiff never sought any medical or other treatment for his alleged injuries and never incurred *any* medical or other expenses whatsoever." (Emphasis added.) The plaintiff argues that he presented sufficient evidence to sustain the jury's award and that an award for intentional infliction of emotional distress need not be supported by proof of incurred medical expenses. We agree with the plaintiff.

General Statutes § 52-216a provides that a trial court shall order a remittitur if it concludes, at the conclusion of the trial, that the verdict is excessive as a matter of law.[8] In the present case, the defendants made

---

[8] General Statutes § 52-216a provides in pertinent part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial."

a timely motion to remit the jury's $50,000 verdict on the sixth count of the plaintiff's complaint. The trial court denied the defendants' motion.

Loiseau, Jr., relies on this court's decision in *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 530 A.2d 596 (1987), to support his argument that the jury's verdict was excessive as a matter of law. In *Buckman,* the plaintiff sued his employer after having been discharged from his employment, alleging that the defendant employer's bad faith failure to enable him to continue group medical coverage had resulted in, inter alia, emotional distress. The jury heard evidence that, at the time of his discharge, the plaintiff had been suffering from a recurrent ulcer and a problematic dental condition. The defendant was aware of the plaintiff's serious health problems and his need for continued medical insurance. The plaintiff's wife, moreover, had been enduring a difficult pregnancy and had a complicated, premature delivery. The jury awarded the plaintiff $51,595.94 in damages, of which only $1595.94 constituted special damages.

Loiseau, Jr., argues that *Buckman* stands for the proposition that an award of compensatory damages for emotional distress must be remitted when the amount of special damages incurred by the plaintiff is minimal in comparison with the award. It is true that in *Buckman* we concluded that, despite the evidence regarding the plaintiff's and his wife's health problems and the defendant's knowledge of them, the jury could not reasonably have found that the plaintiff was entitled to recover $50,000. In reaching the conclusion that the trial court should have ordered a remittitur, we noted that "[t]here [was] no claim and no proof . . . of a permanent injury in this case." Id., 176. We did not, however, as Loiseau, Jr., contends, rely on the minimal amount of special damages incurred by the plaintiff in concluding that the damages award was

excessive, but reasoned, rather, that the award was " 'entirely disproportionate to the loss sustained.' " Id., 177.

When ruling on the defendants' motion for a remittitur, the trial court was required to view the evidence in the light most favorable to sustaining the jury's verdict. *Oakes* v. *New England Dairies, Inc.*, 219 Conn. 1, 13–14, 591 A.2d 1261 (1991). "The size of the verdict alone does not determine whether it is excessive. The only practical test to apply . . . is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. . . . Every reasonable presumption in favor of the correctness of the court's refusal to set aside the verdict as excessive should be indulged . . . and its ruling will not be disturbed unless there is a clear abuse of discretion." (Citations omitted; internal quotation marks omitted.) Id., 14. Applying this standard to the facts of this case, we are persuaded that the trial court properly denied the defendants' motion to remit the verdict on the sixth count.

On the basis of the evidence presented at trial, including the testimony of the plaintiff and his expert, Dunne, the jury could reasonably have found that the plaintiff suffered significant emotional distress as a result of Loiseau, Jr.'s actions. The plaintiff testified to his continuing fear of reprisal by Loiseau, Jr., sleep disturbances and other difficulties in adjustment after termination of his employment at Bird. Dunne testified that, as a result, in part, of Loiseau, Jr.'s abuse, the plaintiff suffered from posttraumatic stress disorder, a major psychiatric illness.

We have stated that an award of damages for emotional distress may be valid "even though it is not substantially based on incurred medical expenses." Id., 15; see *Manning* v. *Michael,* 188 Conn. 607, 616, 452 A.2d 1157 (1982). "The test is whether the amount awarded, *aside from medical expenses,* falls within the necessarily uncertain limits of just damages . . . ." (Emphasis added; internal quotation marks omitted.) *Oakes* v. *New England Dairies, Inc.,* supra, 15. Given the evidence presented at trial and the deference we must accord to the jury's verdict, "we cannot say that the verdict, while generous, failed to meet that test." Id. Accordingly, we conclude that the trial court properly declined to grant a remittitur of the jury's verdict on the sixth count.

E

The defendant Loiseau, Jr., also claims that the trial court improperly awarded the plaintiff punitive damages on the sixth count, when there was no evidence to support such an award. We disagree.

We have consistently stated that "[i]n order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 489, 234 A.2d 825 (1967)." *Venturi* v. *Savitt, Inc.,* 191 Conn. 588, 592, 468 A.2d 933 (1983); see *West Haven* v. *Hartford Ins. Co.,* 221 Conn. 149, 160, 602 A.2d 988 (1992). If the evidence discloses that a defendant was recklessly indifferent to the rights of a plaintiff, an actual intention to do harm to the plaintiff is not necessary. *Collens* v. *New Canaan Water Co.,* supra, 490. In the present case, the jury could reasonably have found from the evidence presented at the trial that Loiseau, Jr., subjected the plaintiff to physical abuse, in reckless disregard of the consequences of his actions. Accordingly,

we are persuaded that the trial court properly allowed the jury to decide whether the plaintiff was entitled to punitive damages on the sixth count of the complaint.

F

Loiseau, Jr.'s final claim is that the trial court improperly failed to declare a mistrial on the basis that the plaintiff's counsel was guilty of misconduct during the course of the trial, which prejudiced the defendants in the eyes of the jury. We conclude that the trial court acted within its discretion in denying the defendants' several requests for a mistrial.

In support of his argument that the trial court should have declared a mistrial, Loiseau, Jr., points to certain actions taken by the plaintiff's counsel that he charges were "designed to, and did, indelibly prejudice the defendants and their counsel in the minds of the jury and robbed the defendants of their fundamental right to a fair and impartial trial." In particular, he cites the plaintiff's counsel's questioning of him in regard to his arrest record, suggestions by the plaintiff's counsel before the jury that defense counsel's questioning was improper and that defense counsel had hidden the truth, and the plaintiff's counsel's reference in argument before the jury to the size of defense counsel's law firm.

We have stated that "[a] deliberate attempt by counsel to create a prejudice in the minds of the jury . . . may justify the trial court in granting a motion for a mistrial as a punitive measure." *Bryar* v. *Wilson,* 152 Conn. 162, 164–65, 204 A.2d 831 (1964); see *Furber* v. *Trowbridge,* 117 Conn. 478, 481, 169 A. 43 (1933). We have also stated, however, that "[t]he trial court is invested with a large discretion with regard to arguments of counsel, and we should interfere only where that discretion was clearly exceeded or abused to the manifest injury of some party." *Bryar* v. *Wilson,* supra, 165. The trial court similarly exercises broad discre-

tion in deciding what lines of questioning it will allow and whether counsel's comments before the jury are so prejudicial as to necessitate the declaration of a mistrial. See, e.g., *James* v. *Bowen,* 83 Conn. 702, 706, 78 A. 420 (1910) (trial court is invested with a large discretion over arguments of counsel and " 'conduct of the trial in other respects' "). After reviewing the record for the alleged instances of attorney misconduct, we are persuaded that the trial court in the present case did not abuse its discretion in denying the defendants' motions for a mistrial.

## II

We now consider the claims raised by the plaintiff in his cross appeal.

## A

The plaintiff first claims that the trial court improperly failed to instruct the jury, with respect to the defamation counts of the defendants' counterclaim, that he enjoyed a qualified privilege to report the defendants' business improprieties to public authorities, and, therefore, that the defendants had the burden of proving malice in order to prevail on these counts. The defendants argue that the plaintiff did not properly preserve this claim because he failed to except to the trial court's charge in accordance with Practice Book § 315.[9] We agree with the defendants and, therefore, we do not reach the merits of the plaintiff's claim.

The plaintiff asserts that he specifically requested that the trial court instruct the jury that he had a "quali-

[9] Practice Book § 315 provides: "The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

fied immunity" to report to the FBI and to the Department of Defense the "illegal procurement practices" of the defendants Bird and Loiseau, Sr. The plaintiff did not submit a written request to charge with respect to the defendants' defamation counts. He did, however, except to the trial court's jury charge immediately after it was given. We conclude, nevertheless, that the plaintiff's exception did not conform with the requirements of § 315.

Section 315 provides that this court is not bound to review claims of error in jury instructions if the party raising the claim did not either submit to the trial court a written request to charge or promptly except to the charge after it was delivered. The rule provides further that "[c]ounsel taking the exception shall state distinctly the matter objected to and the ground of objection." "The purpose of the rule is to alert the court to claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Internal quotation marks omitted.) *Prystash* v. *Best Medium Publishing Co.*, 157 Conn. 507, 512, 254 A.2d 872 (1969). The defendants argue that the plaintiff's exception to the trial court's charge on the counterclaim was so general as to fail to indicate the specific counts of the counterclaim to which he was excepting or the grounds of the exception. We agree.

After the trial court completed its charge to the jury, the plaintiff timely excepted to certain aspects of the court's instructions on the counts of his complaint. The plaintiff's counsel then stated that he had a "general objection" to the trial court's charges on the defendants' counterclaim. During the course of his exception, the plaintiff's counsel twice alluded to a potential "privilege" that the plaintiff might have to disclose the defendants' illegal conduct to certain authorities or in

accordance with a legal duty.[10] In connection with his references to privilege, the plaintiff's counsel specifically mentioned the trial court's charge on the defend-

[10] The plaintiff's exception to the trial court's charge on the defendants' counterclaim was as follows:

"Mr. Laviano: Fine. Your Honor, I have a general objection to the charges on counterclaims in that I feel that they generally contain too many assumptions by the Court as to what Mr. Berry admits and what he did. And are unduly prejudicial to the plaintiff.

"I think that more boiler plate charges would be appropriate. And in particular, I think that there needs to be some modification of these charges on the counterclaims to emphasize that Mr. Berry may be privileged to disclose and to deal with these documents to the extent to which he is in good faith following the law or trying to obey the law.

"I do not agree with the charge regarding the duty of loyalty. Except as limited by his right to obey the law. In other words, for example, number thirteen. 'Breach of duty of loyalty. If you find that Mr. Berry intentionally sought to injur[e] Bird Electron Beam's business or interest, then you must find Mr. Berry violated a duty of loyalty to Bird Electron Beam.'

"Your Honor, that's overly broad. He may intend to injure Bird's people, Bird's reputation by something—or any plaintiff might intend to injure his employer's reputation by disclosing an illegality, murder, homicide, or anything.

"This instruction would say that as long as he intended to injure his business or interest, that that is unprivileged and he can't do that. I think there has got to be some limitation that if he—

"The Court: Hold on, counsellor, would you examine the verdict forms?

"Mr. Laviano: So, Your Honor, for example, the breach of duty of loyalty and most of these charges on the counterclaim should have some explicit instruction to the jury that if what Ricky was doing was uncovering illegalities or if what Ricky was doing was privileged in any way, particularly by disclosure to the FBI and the Department of Defense, that he did not violate his duty of loyalty or any other duty to Bird. Even if he intended to injure their reputation. Because there are times in which an employer's reputation should be injured.

"Indeed an employee would have an ethical duty to injure the reputation if, for example, Mr. Berry sees that Bird is miscertifying welders. And we have heard testimony that planes could fall out of the air as a result of this kind of thing.

"I think just because an employee intended to injure his employer's reputation or interest in disclosing that, that doesn't mean that he has committed any tort and has violated a duty of loyalty.

"Your Honor has put no limitation whatsoever in this instruction other than if he intentionally sought to injure Bird Electron Beam's business or

ants' breach of fiduciary duty of loyalty claim. At no point, however, did the plaintiff expressly refer to the trial court's charge on the defendants' defamation counts.

The trial court delivered instructions on all seven counts of the defendants' counterclaim, which arose from a common set of facts. "While we accept, as correct, [the plaintiff's] statement of what he had in mind, there is nothing to indicate that the court correctly understood what he had in mind." *Bevins* v. *Brewer,* 146 Conn. 10, 13, 147 A.2d 189 (1958). The plaintiff took only a general exception to the trial court's charge on the defendants' counterclaim and failed to draw any nexus between the asserted "privilege" and the defamation counts. See *Iseli Co.* v. *Connecticut Light & Power Co.,* 211 Conn. 133, 139, 558 A.2d 966 (1989). We are persuaded that the plaintiff's "imprecise reference did not reasonably alert the court to the deficiencies in the charge now advanced. Counsel thus failed to 'state distinctly the matter objected to and the ground of objection' as required by Practice Book § 315 for appellate review." *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 237–38, 520 A.2d 1008 (1987). Accordingly, we do not reach the merits of the plaintiff's first claim.

## B

The plaintiff's second claim is that the trial court improperly directed a verdict in favor of the defendant Loiseau, Sr., on the false imprisonment count of the plaintiff's complaint when the jury was unable to reach a verdict on that count. We agree and, therefore, reverse the trial court's judgment and remand the case for a new trial with respect to that count.

---

interest then you must find Mr. Berry violated his duty of loyalty. Very prejudicial instruction.
  "The Court: Is that it?
  "Mr. Laviano: That's the end, Your Honor.
  "The Court: Alright. We noted those for the record."

At the close of the plaintiff's case, the defendants moved for a directed verdict on all six counts of the plaintiff's complaint. The trial court granted the defendants' motion with respect to the defamation count only. The remaining counts, including the false imprisonment count, were sent to the jury. The jury reached verdicts in favor of the plaintiff on all counts except the false imprisonment count, on which it was unable to reach a verdict. The plaintiff promptly moved for a retrial of the false imprisonment count.[11] The defendants moved to set aside the jury's verdicts and have verdicts directed in their favor as to counts two, three, four and six. The defendants also renewed their motion for a directed verdict on the false imprisonment count. After hearing argument on the motions, the trial court granted the defendants' motion to set aside and direct verdicts with respect to the wrongful termination and breach of implied covenant of good faith counts. The trial court also directed a verdict for Loiseau, Sr., on the false imprisonment count.

In directing a verdict on the false imprisonment count, the trial court first reviewed the evidence that had been presented with respect to that count.[12] The

[11] The plaintiff also moved for additur with respect to the second, third and fourth counts of his complaint, which the trial court denied. The trial court's denial of those motions is not an issue in this appeal.

[12] The trial court's statement and ruling regarding the motion for a directed verdict on the false imprisonment count were as follows:

"As to count one of the complaint, false imprisonment, the Court directs a verdict for the defendant, Edward Loiseau, Sr.

"False imprisonment is the intentional, unlawful restraint or confinement of a person's physical liberty through the exercise of force or violation, express or implied.

"In the instant case, the plaintiff grounds his use of force claim on the presence of a gun in the possession of Loiseau, Sr.

"When the plaintiff, Ricky Berry, was brought into Loiseau, Sr.'s office and confronted with pictures Berry had taken, the evidence showed that Ricky Berry gave different statements regarding the gun.

court then concluded: "It is incumbent upon the plaintiff to prove by a preponderance of the whole evidence the allegations of this count. The Court finds the plaintiff has failed to do so. The credible evidence falls far short of sustaining that burden, leaving the Court no alternative but to direct the verdict as to count one for the defendant."

The plaintiff argues that the trial court improperly usurped the province of the jury by directing a verdict on the false imprisonment count after the jury was unable to reach a verdict. Loiseau, Sr., contends, to the contrary, that the trial court acted within its discretion in directing a verdict on the basis that the evidence

---

"To Dr. Dunne, Berry stated that the gun was pointed to his head. In court, Berry testified that the gun was slammed down on the table in front of him.

"The complaint, in paragraph seven, alleges that a handgun was placed on the table, in front of the plaintiff, by Loiseau, Sr.

"The complaint, in paragraph eight, alleges that 'Loiseau, Sr., brandished his weapon and forced [the] plaintiff to go for a ride.'

"Ricky Berry's testimony, at trial, was both he and Loiseau, Sr., leaving Loiseau's office to go to Berry's home to get the rest of the pictures taken by Berry, Berry [let] himself in on the passenger's side, Loiseau, Sr. [got] in on the driver's side.

"There is no testimony by Berry that a gun was visible or brandished about at this time.

"The written police report of the complaint, lodged by Ricky Berry himself, in connection with this incident, later that same day, makes no mention of a gun.

"The testimony of both Edward Loiseau, Jr., and Edward Loiseau, Sr., as to the gun is that Ed Loiseau, Sr., slipped the handgun from his briefcase into his back pocket, while keeping his back to Ricky Berry.

"That this took place just before Ricky Berry and Loiseau, Sr., left Loiseau's office to go to Ricky Berry's home for the rest of the pictures— that the reason that the gun went with Loiseau, Sr., was that he never went anywhere without his gun because of an assault in Boston some years before in which he was sodomized. And that he had a permit for the gun.

"It is incumbent upon the plaintiff to prove by a preponderance of the whole evidence the allegations of this count.

"The Court finds the plaintiff has failed to do so. The credible evidence falls far short of sustaining that burden, leaving the Court no alternative but to direct the verdict as to count one for the defendant."

was so inconsistent as to be insufficient to support a claim of false imprisonment. After reviewing the record, we conclude that the trial court acted improperly in directing a verdict for Loiseau, Sr., on the false imprisonment count.

Pursuant to Practice Book § 321, a party whose motion for a directed verdict has been denied may move to have the jury's verdict set aside and to have judgment rendered in accordance with his motion for a directed verdict.[13] If no verdict has been returned, however, the party simply moves for judgment pursuant to the motion for a directed verdict. The trial court may then either direct the entry of judgment or order a new trial.

"The standard of review of directed verdicts is well settled. A directed verdict is justified if on the evidence the jury could not reasonably and legally have reached any other conclusion. *Petyan* v. *Ellis*, 200 Conn. 243, 244, 510 A.2d 1337 (1986); *Golembeski* v. *Metichewan Grange No. 190*, 20 Conn. App. 699, 701, 569 A.2d 1157

[13] Practice Book § 321 provides: "Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case in chief is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. After the acceptance of a verdict and within the time stated in Sec. 320 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his motion for a directed verdict; or if a verdict was not returned such party may move for judgment in accordance with his motion for a directed verdict within the aforesaid time after the jury have been discharged from consideration of the case. If a verdict was returned the court may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

(1990)." *Merola* v. *Burns,* 21 Conn. App. 633, 636, 575 A.2d 1025 (1990). In reviewing the trial court's action in directing a verdict for Loiseau, Sr., we must consider the evidence in the light most favorable to the plaintiff. *Petyan* v. *Ellis,* supra; *Merola* v. *Burns,* supra. This court has repeatedly stated that directed verdicts are not favored. *Petyan* v. *Ellis,* supra; *Puro* v. *Henry,* 188 Conn. 301, 303, 449 A.2d 176 (1982).

False imprisonment is the unlawful restraint by one person of the physical liberty of another. *Green* v. *Donroe,* 186 Conn. 265, 267, 440 A.2d 973 (1982); *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 499, 101 A.2d 500 (1953). "Any period of such restraint, however brief in duration, is sufficient to constitute a basis for liability. 32 Am. Jur. 2d, False Imprisonment § 14." *Green* v. *Donroe,* supra. "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." *Lo Sacco* v. *Young,* 20 Conn. App. 6, 19, 564 A.2d 610, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989).

In the present case, the evidence, viewed in the light most favorable to the plaintiff, established the following. On March 7, 1987, the plaintiff was at his work station in the Bird shop. Loiseau, Jr., came and took him by the arm and escorted him to Loiseau, Sr.'s office. When the plaintiff was brought into the office, Loiseau, Sr., displayed a revolver. Both Loiseau, Sr., and Loiseau, Jr., used abusive and threatening language toward the plaintiff and accused him of trying to harm their business. Loiseau, Sr., then took the plaintiff by the arm and escorted him to Loiseau, Sr.'s car. The plaintiff did not feel free to leave while he was in Loiseau, Sr.'s car. Loiseau, Sr., drove the plaintiff to

the plaintiff's house where the plaintiff retrieved certain photographs and gave them to Loiseau, Sr.

In ruling on the defendants' motion for a directed verdict, the trial court properly defined false imprisonment as "the intentional, unlawful restraint or confinement of a person's physical liberty through the exercise of force . . . express or implied." See *Green* v. *Donroe,* supra; *Lo Sacco* v. *Young,* supra. The trial court assumed that the plaintiff's claim that Loiseau, Sr., had used force was based solely on his possession of a gun. Because the evidence was inconsistent with regard to Loiseau, Sr.'s possession and use of a gun during the events of March 7, 1987, the trial court concluded that the plaintiff had not met his burden of proving the element of force by a preponderance of the evidence. See footnote 12, supra.

It is uniquely the province of the trier of fact, in this case the jury, to determine the import of the evidence by gauging the credibility of the witnesses. *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). The fact that certain testimony is uncorroborated, or even contradicted, does not make it insufficient to support a verdict if the testimony is believed by the trier. See *Garrison* v. *Garrison,* 190 Conn. 173, 179, 460 A.2d 945 (1983). Thus, in the present case, had the jury believed the plaintiff's testimony regarding the events of March 7, 1987, it reasonably could have found Loiseau, Sr., liable for false imprisonment.

The jury, however, was unable to reach a verdict with respect to this count. Practice Book § 321 grants the trial court discretion in determining whether to order a new trial when the jury has not returned a verdict.

We are persuaded, nonetheless, that the trial court in this case abused its discretion in directing a verdict for Loiseau, Sr., on the false imprisonment count. Accordingly, we reverse and remand the case to the trial court for a new trial on this count.

### III

In his separate appeal, the plaintiff challenges the sufficiency of his punitive damages award. The plaintiff claims that the trial court improperly: (1) denied him his constitutional right to have the jury determine the amount of his punitive damages award; (2) applied General Statutes § 52-251c to limit the amount of punitive damages awarded him to one third of his recovery on the intentional infliction of emotional distress count;[14] and (3) failed to consider evidence of the plain-

[14] "[General Statutes] Sec. 52-251c. LIMITATION ON ATTORNEY CONTINGENCY FEES IN PERSONAL INJURY, WRONGFUL DEATH AND PROPERTY DAMAGE ACTIONS. (a) In any claim or civil action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, the attorney and the claimant may provide by contract, which contract shall comply with all applicable provisions of the rules of professional conduct governing attorneys adopted by the judges of the superior court, that the fee for the attorney shall be paid contingent upon, and as a percentage of: (1) Damages awarded and received by the claimant; or (2) settlement amount pursuant to a settlement agreement.

"(b) In any such contingency fee arrangement such fee shall be the exclusive method for payment of the attorney by the claimant and shall not exceed an amount equal to a percentage of the damages awarded and received by the claimant or of the settlement amount received by the claimant as follows: (1) Thirty-three and one-third per cent of the first three hundred thousand dollars; (2) twenty-five per cent of the next three hundred thousand dollars; (3) twenty per cent of the next three hundred thousand dollars; (4) fifteen per cent of the next three hundred thousand dollars; and (5) ten per cent of any amount which exceeds one million two hundred thousand dollars.

"(c) For the purposes of this section, 'damages awarded and received' means in a civil action in which final judgment is entered, that amount of the judgment or amended judgment entered by the court that is received by the claimant; 'settlement amount received' means in a claim or civil action in which no final judgment is entered, the amount received by the claimant pursuant to a settlement agreement; and 'fee' shall not include disburse-

tiff's nontaxable costs in calculating his punitive damages award. The plaintiff also mounts a general challenge to our rule governing the measure of common law punitive damages. We find merit in the plaintiff's second claim and, accordingly, reverse and remand the case to the trial court for a new hearing on punitive damages.

The relevant facts are as follows. The trial court submitted written interrogatories to the jury concerning punitive damages and instructed that, should the jury find such damages warranted, the court would determine the amount of the award. The jury responded that the plaintiff was entitled to recover punitive damages on his intentional infliction of emotional distress claim, and that the defendants Bird and Loiseau, Sr., were entitled to recover punitive damages on the defamation counts of the counterclaim. Thereafter, the trial court conducted a hearing to determine the amounts of the punitive damages awards, at which the parties submitted evidence of their litigation expenses. The plaintiff submitted evidence of a retainer agreement along with an affidavit summarizing hourly attorney's fees and costs totaling $143,902.[15] The defendants sought hourly attorney's fees and costs in the amount of $157,655.

---

ments or costs incurred in connection with the prosecution or settlement of the claim or civil action, other than ordinary office overhead and expense."

[15] The text of the agreement between the plaintiff and his attorney was as follows:

"RETAINER AGREEMENT

The undersigned client hereby retains the undersigned law firm to institute litigation against Bird Electron Beam Corp. and its principals Loiseau Sr. and Jr. for various tort and contract claims as a result of my employment termination. You will be paid 1/3 of all monies actually recovered and collected from the clients and in addition all hourly fees awarded by any court or state agency or jury in the form of civil rights attorneys fees or punitive damages under federal or Connecticut state law or fee shifting statutes.

The trial court concluded that the provisions of § 52-251c controlled the plaintiff's award and, therefore, awarded the plaintiff punitive damages of $16,667, the equivalent of one third of the plaintiff's recovery for intentional infliction of emotional distress.[16] The court awarded the defendants $50,000 in punitive damages.[17] From this judgment, the plaintiff appealed.

---

The hourly rate is $150.00 for attorneys and $50.00 for para-legals. This may be adjusted in the event our rates change. In addition, all out-of-pocket expenses are payable by the client, win or lose.

/s/ Ricky Berry

CLIENT

/s/ William M. Laviano

ATTORNEY

Dated Ridgefield, Ct.
3/31/87"

[16] In a memorandum submitted prior to the hearing, the defendants argued that the plaintiff's punitive damages should be computed on the basis of his contingency fee agreement with his attorney. They contended that because the agreement was governed by General Statutes § 52-251c, the plaintiff's punitive damages could not exceed one third of the $50,000 compensatory damages award on the plaintiff's intentional infliction of emotional distress count. The trial court accepted the defendants' argument, ruling as follows on the issue of the plaintiff's punitive damages:

"The Court: As I indicated, we have the matter of the attorneys fees that the Court indicated we would address after having received argument and having reviewed all of the submittals that counsel has made.

"As to the plaintiff, the Court finds the provisions of Section 52-251[c] of the General Statutes controlling.

"And accordingly, allows plaintiff a punitive damage award of sixteen thousand six hundred sixty-seven dollars ($16,667.00). Which is arrived at by taking one third of the fifty thousand dollar recovery on the intentional infliction of emotional distress claim."

The plaintiff promptly excepted to the trial court's ruling.

[17] The trial court calculated the defendants' punitive damages award on the basis of the evidence of total hourly fees and costs submitted by the defendants' attorney. In awarding the defendants $50,000 in punitive damages when they had sought $157,655, the trial court explicitly rejected the defendants' argument that all of the claims and counterclaim were so intertwined as to allow them to recover all litigation costs they had incurred, despite the fact that the jury had awarded them punitive damages only on the defamation counts of the counterclaim.

## A

As an initial matter, we consider the plaintiff's argument, raised for the first time on appeal, that this court should abandon the longstanding rule in Connecticut limiting common law punitive damages to a party's litigation costs. The plaintiff argues that the rule requiring that punitive damages be measured by attorney's fees does not adequately serve to punish or deter wrongdoers. He proposes, therefore, that this court should set aside this rule in favor of a rule allowing broader jury discretion in fashioning punitive damages awards.[18] We decline the plaintiff's invitation to abandon our well established rule governing punitive damages awards.

The plaintiff claims that we should abandon our rule limiting punitive damages to litigation expenses less taxable costs in light of *Pacific Mutual Life Ins. Co.* v. *Haslip,* 499 U.S. 1, 111 S. Ct. 1032, 113 L. Ed. 2d 1 (1991). In *Haslip,* the United States Supreme Court upheld an Alabama jury's punitive damages award against a due process challenge raised by the wrongdoer. In accordance with the common law practice, Alabama allows juries broad discretion over the size of punitive damages awards. In reaching its conclusion that the punitive damages assessed by the jury did not violate the due process clause of the fourteenth amendment to the United States constitution, the court reviewed prior cases, including *Browning-Ferris Industries of Vermont, Inc.* v. *Kelco Disposal, Inc.,* 492 U.S.

---

[18] The defendants argue that the plaintiff's claim is not properly before this court because he failed to raise it at the trial level. The plaintiff bases his argument in substantial part on the United States Supreme Court's decision in *Pacific Mutual Life Ins. Co.* v. *Haslip,* 499 U.S. 1, 111 S. Ct. 1032, 113 L. Ed. 2d 1 (1991). Because this decision was released subsequent to the trial court's ruling on the issue of punitive damages, we shall address the merits of the plaintiff's claim.

257, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989) (*Browning-Ferris Industries*). There, a majority of the court had rejected a claim that punitive damages awarded in a civil case between private parties could violate the excessive fines clause of the eighth amendment to the United States constitution.

The plaintiff argues that the United States Supreme Court's decision in *Haslip,* when read in conjunction with its decision in *Browning-Ferris Industries,* has dispelled a primary concern underlying Connecticut's limitation on punitive damages, which was first expressed by this court in *Hanna* v. *Sweeney,* 78 Conn. 492, 62 A. 785 (1906). In *Hanna,* this court characterized the common law doctrine of punitive damages as a "hybrid" that contained elements of a criminal fine. Id., 494. More recently, we reiterated our concern that the determination of punitive damages under the common law rule allowing broad jury discretion is at odds with the generally accepted rule of compensation in civil cases. *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 236, 477 A.2d 988 (1984).

The plaintiff contends that the holdings of the United States Supreme Court in *Haslip* and *Browning-Ferris Industries* undermine the rationale behind Connecticut's rule. The plaintiff acknowledges that these holdings do not affect the constitutionality of Connecticut's limitations on punitive damages awards. He argues, nonetheless, that this court should abandon the socalled "compensatory" measure of punitive damages in favor of an "exemplary" type of punitive damages that allows greater jury discretion. The plaintiff contends that absent the "measuring rod" of attorney's fees, juries will be better able to award punitive damages that serve the purposes of deterrence and punishment. We are unpersuaded.

In *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* supra, we declined a similar invitation to stray from our well settled rule regarding the measurement of punitive damages. We affirmed the continuing viability of a long line of cases holding that common law punitive damages serve primarily to compensate the plaintiff for his injuries and, thus, are properly limited to the plaintiff's litigation expenses less taxable costs. See, e.g., *Alaimo* v. *Royer,* 188 Conn. 36, 42, 448 A.2d 207 (1982); *Vandersluis* v. *Weil,* 176 Conn. 353, 358, 407 A.2d 982 (1978); *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 488, 234 A.2d 825 (1967); *Triangle Sheet Metal Works, Inc.* v. *Silver,* 154 Conn. 116, 127, 222 A.2d 220 (1966); *Hanna* v. *Sweeney,* supra. We recognized, moreover, that our rule, when viewed in the light of the increasing costs of litigation, also serves to punish and deter wrongful conduct. *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* supra, 237–38. In recent years, we have continued to adhere to the view that our traditional rule remains viable. See, e.g., *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* 216 Conn. 40, 59 n.4, 578 A.2d 1054 (1990); *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 559, 562 A.2d 1100 (1989). We remain convinced that a rule limiting punitive damages awards to the expenses of litigation less taxable costs "fulfills the salutary purpose of fully compensating a victim for the harm inflicted on him while avoiding the potential for injustice which may result from the exercise of unfettered discretion by a jury." *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* supra, 238.

B

The plaintiff claims that he was entitled under article first, § 19 of the Connecticut constitution to have the jury determine the amount of punitive damages to

be awarded him.[19] The defendant Loiseau, Jr., argues that the plaintiff has not properly preserved this claim for appellate review. We agree with Loiseau, Jr.

The record reveals that the plaintiff did not take an exception after the trial court instructed the jury that the court would determine the amount of punitive damages to be awarded. In addition, the plaintiff has failed to present to this court portions of the trial transcript, if any exist, that disclose an objection to the trial court's determination of punitive damages, made by the plaintiff during the course of the trial.[20] See Practice Book § 4061; *Taylor* v. *American Thread Co.,* 200 Conn. 108, 110, 509 A.2d 512 (1986) (responsibility of appellant to provide adequate record for appellate review).

Practice Book § 4185 provides that this court is not bound to consider a claim that was not distinctly raised at trial. This rule applies to constitutional claims. *DiBerardino* v. *DiBerardino,* 213 Conn. 373, 376, 568 A.2d 431 (1990); *Sands* v. *Sands,* 188 Conn. 98, 106, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983). " '[O]nly in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court.' " *Roche* v. *Fairfield,* 186 Conn. 490, 505, 442 A.2d 911 (1982). "Such exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the rec-

___

[19] Article first, § 19 of the Connecticut constitution provides: "The right of trial by jury shall remain inviolate."

[20] At a hearing held on December 5, 1990, after the jury had been excused, the plaintiff's counsel objected to the court's reservation to itself of the determination of the amount of punitive damages. We conclude that the plaintiff's objection, made *after* the jury had been excused, was not made in a timely fashion and, therefore, was inadequate to preserve the plaintiff's claim that the jury should have determined the punitive damages award. See Practice Book § 315; footnote 9, supra.

ord supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. . . . An exception may also be made where consideration of the question is in the interest of public welfare or of justice between the parties." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Friedland,* 222 Conn. 131, 147, 609 A.2d 645 (1992). The plaintiff has pointed us to no such exceptional circumstances in the present case and, accordingly, we decline to review the merits of this claim.

C

We next address the plaintiff's claim that the trial court improperly applied General Statutes § 52-251c to limit the amount of his punitive damages award to one third of his recovery on the intentional infliction of emotional distress count. The plaintiff claims that the trial court incorrectly concluded that § 52-251c required the court to measure the plaintiff's punitive damages award by reference to the contingency fee agreement he had with his attorney. He argues that the trial court should properly have calculated the award based on the number of hours that his attorney actually devoted to the case. We conclude that the trial court acted improperly to the extent that it held that § 52-251c *controlled* the amount of punitive damages it was permitted to award the plaintiff. We therefore reverse and remand the case for a new hearing on punitive damages.

Section 52-251c was enacted in 1986 as part of the Connecticut Tort Reform Act. Public Acts 1986, No. 86-338, § 1. The statute restricts the size of the fee that an attorney can recover from a client pursuant to a contingency fee agreement in an action to recover damages for personal injury, wrongful death or property

damage.[21] Section 52-251c (b) provides that when an attorney and his client enter into such a contingency fee arrangement, "such fee shall be the exclusive method for payment of the attorney" by the client and "shall not exceed an amount equal to . . . [t]hirty-three and one-third per cent of the first three hundred thousand dollars" of the damages awarded and received by the client. The trial court concluded that § 52-251c (b) operated to limit the amount of punitive damages that it could award the plaintiff in accordance with his fee agreement with his attorney. See footnote 16, supra. We disagree.

"In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature." *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 755, 601 A.2d 1005 (1992). It is a well established rule of statutory construction that "when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987). Section 52-251c, by its terms, regulates the relationship between an attorney and a client with respect to the collection of a contingency fee in certain types of civil actions.[22] The stat-

---

[21] The plaintiff argues that even if the trial court correctly concluded that General Statutes § 52-251c controls the award of punitive damages in a personal injury action involving a contingency fee arrangement, intentional infliction of emotional distress is not a "personal injury" within the meaning of the statute. Because we conclude that the trial court improperly applied § 52-251c to the determination of the plaintiff's punitive damages, we need not address this alternative claim.

[22] The legislative history of General Statutes § 52-251c supports our conclusion that the statute was intended to regulate the attorney-client relationship in order to protect plaintiffs from excessive legal fees. See 29 S. Proc., Pt. 10, 1986 Sess., pp. 3465–66, remarks of Senator Thomas F. Upson; 29 H.R. Proc., Pt. 16, 1986 Sess., pp. 5831–33, remarks of Representative Robert G. Jaekle.

ute does not purport to govern a trial court's discretion in assessing the amount of punitive damages to be awarded to a party who has a contingency fee agreement with his attorney. " 'Courts should not read into clearly expressed legislation provisions which do not find expression in its words.' " *Local 218 Steamfitters Welfare Fund* v. *Cobra Pipe Supply & Coil Co.,* 207 Conn. 639, 645, 541 A.2d 869 (1988). Accordingly, we hold that the trial court improperly concluded that § 52-251c controlled the amount of the plaintiff's punitive damages award.

In reversing the judgment of the trial court, we do not hold that the trial court improperly considered the plaintiff's fee agreement with his attorney in calculating the punitive damages to be awarded to the plaintiff. Although the plaintiff correctly argues that the trial court misinterpreted the applicability of § 52-251c, we reject his underlying premise that the factfinder should not consider a contingency fee arrangement in determining punitive damages. This court has previously upheld punitive damages awards computed on the basis of a plaintiff's contingency fee agreement with his attorney. See *Holbrook* v. *Casazza,* 204 Conn. 336, 359–61, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988); *Markey* v. *Santangelo,* 195 Conn. 76, 80, 485 A.2d 1305 (1985); *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 280, 293–96, 472 A.2d 306 (1984). We note, moreover, that the admission of a written fee agreement as evidence of the plaintiff's litigation expenses is in accord with Connecticut practice. See 6 Connecticut Practice, J. Fitzgerald & R. Yules, Connecticut Trial Practice (1987) § 5.19, p. 197. Thus, on remand, the trial court may properly consider the terms of the plaintiff's fee agreement in assessing the amount of punitive damages to be awarded.

## D

The plaintiff's final claim is that the trial court improperly excluded nontaxable costs from its award of punitive damages. The plaintiff argues that even if the trial court correctly applied § 52-251c to limit his punitive damages award, it improperly failed to consider evidence of his nontaxable costs. The defendants contend that the plaintiff submitted insufficient evidence of these costs and, therefore, was not entitled to be compensated for them. Because we are remanding this case for a new hearing on the punitive damages due the plaintiff, we address this claim only insofar as it may arise on remand.

According to the defendants, the plaintiff's submission of an affidavit summarizing his nontaxable expenses, without supporting documentation, was inadequate to substantiate his claim. The defendants argue, moreover, that the plaintiff failed to show that the claimed expenses had been incurred in connection with the prosecution of the intentional infliction of emotional distress count, on which the jury had decided that the plaintiff was entitled to punitive damages. The defendants contend that, as a result of the plaintiff's failure to provide sufficient evidence, the trial court had no basis upon which to award the plaintiff nontaxable costs.

Common law punitive damages cannot exceed the plaintiff's expenses of litigation, less his taxable costs. See, e.g., *Champagne* v. *Raybestos-Manhattan, Inc.,* supra, 532–33; *Vandersluis* v. *Weil,* supra, 358. Litigation expenses may include not only reasonable attorney's fees, but also any other nontaxable disbursements reasonably necessary to prosecuting the action. *Markey* v. *Santangelo,* supra, 80. We have stated that "for an award of punitive damages, it is essential that evi-

dence of the cost of the litigation of the case being tried must be offered." *Vandersluis* v. *Weil,* supra; see *Chykirda* v. *Yanush,* 131 Conn. 565, 568–69, 41 A.2d 449 (1945). Our case law, however, does not specify the type of evidence required to support an award of punitive damages. On remand, the trial court is to consider any evidence that the plaintiff submits regarding nontaxable costs incurred in the prosecution of his intentional infliction of emotional distress claim.

The judgment of the trial court is affirmed with respect to the defendant Edward Loiseau, Jr.'s appeal and the first claim of the plaintiff's cross appeal. The judgment of the trial court is reversed with respect to the second claim of the plaintiff's cross appeal and the case is remanded for a new trial on the first count of the plaintiff's complaint. The judgment of the trial court is reversed, in part, with respect to the plaintiff's appeal and the case is remanded for a new hearing on the award of punitive damages to the plaintiff.

In this opinion PETERS, C. J., concurred.

COVELLO, J., with whom CALLAHAN, J., joins, concurring. I concur in the result.

BERDON, J., concurring. I concur only because I would not address the issue in part III A of the majority opinion concerning the rule limiting punitive damages to the party's litigation costs. The question of whether we should abandon that rule was raised for the first time by the plaintiff on appeal. Public policy shifts in this state require a more meaningful review of the archaic rule, which was adopted in *Hanna* v. *Sweeney,* 78 Conn. 492, 62 A. 785 (1906). See, e.g., General Statutes § 52-240b.[1]

I concur in the opinion in all other respects.

---

[1] General Statutes § 52-240b provides: "Punitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, con-

sumers or others who were injured by the product. If the trier of fact determines that punitive damages should be awarded, the court shall determine the amount of such damages not to exceed an amount equal to twice the damages awarded to the plaintiff.''